[Civ. No. 1978.  Second Appellate District.—May 27, 1916.]

LEO B. GASKILL, Administrator of the Estate of Albert Kolb, Deceased, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

NEGLIGENCE—ATTEMPT TO BOARD MOVING TRAIN—CONTRIBUTORY NEGLIGENCE.—One who attempts to board an electric car while it is moving at the rate of nine to ten miles per hour, is guilty of contributory negligence which will defeat a recovery of damages for injuries received by him, even though the defendant is guilty of negligence in the operation of the train.

ID.—RIGHT OF COURT TO TAKE CASE FROM JURY.—The court is authorized to take the case from the jury when, upon the whole evidence, were a verdict returned in favor of the plaintiff, the court would feel impelled to set it aside as unsupported by the evidence.

ID.—MOTION FOR NEW TRIAL—INSUFFICIENT SHOWING.—It is held that the affidavits presented on the motion for a new trial in this case were insufficient to warrant the granting of the motion.

ID.—DIRECTED VERDICT—VIEWS OF JURY IMMATERIAL.—Where the court directs the verdict of the jury it is immaterial whether the jurors agree with the court or not.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George D. Murray, Judge presiding.

The facts are stated in the opinion of the court.

M. O. Graves, for Appellant.

J. W. McKinley, and A. W. Ashburn, Jr., for Respondent.

30 Cal. App.—38

JAMES, J.—Plaintiff, as the administrator of the estate of Albert Kolb, deceased, brought this action to recover damages on account of the death of said Kolb, alleged to have been caused by the negligent acts of the defendant corporation. At the conclusion of all of the testimony the trial judge directed a verdict to be returned for the defendant. The judgment, which in effect was that of a nonsuit, was thereupon entered. Subsequently plaintiff made a motion for a new trial, which was denied. This appeal was then taken from the judgment as entered and from the order denying the motion mentioned. The appeal is presented on a statement of the case.

In September, 1911, defendant as a railway corporation was engaged in operating between the city of Los Angeles and the towns of Santa Monica, Ocean Park, and Venice, an electric railroad which was used mainly for the carriage of passengers. On a day about the date mentioned, Albert Kolb, the deceased, in company with a friend named Peter Dombroska, journeyed to the beach town of Ocean Park, where the two men spent the greater part of the day. At about 12 o'clock at night they appeared at one of the stopping-places provided by the railroad company at Ocean Park, where they waited for a train to take them back to the city. The men had been drinking intoxicating liquor during the day and evening. At the point where the stopping-place referred to was located there was a double-track railway construction over which the electric cars passed, and which tracks, proceeding from the north toward the station of Venice to the south, cut at right angles, or approximately thereto, various streets which intersected the right of way and defined the blocks of land upon which numerous buildings were built. At a point about sixty feet below or southerly from the intersection of Pier Avenue with the trolley-way, was located a sign attached to a post, which bore the legend, "All Cars Stop Here." In considering the action of the court in refusing to submit the issues defined by the pleadings to the jury, the testimony of Dombroska, the friend of deceased, may be taken as furnishing the most favorable evidence offered in the attempt to sustain the cause of action alleged. It may be remarked that as to many of the material matters testified to by this witness there was contradictory testimony given on behalf of the defendant. Dombroska testified that he and his friend Kolb had gone to the beach for a day of pleasure. He testified that they had pa-

tronized the saloons quite liberally, but he stated that neither he nor his friend at 12 o'clock that night was in a state of intoxication. He testified that Kolb drank "one whisky" in the forenoon, and two glasses of beer in the afternoon, while he (Dombroska) had two drinks of whisky in the morning and "a dozen or thirteen beers" in the afternoon; that they purchased a pint bottle of whisky before they went to the stopping-place where they intended to take the cars for Los Angeles. At the time they arrived at this place it was about 12 o'clock. After going to a neighboring lunch counter and partaking of food, they returned to the railway line and waited for a train. A police officer testified later in the case that he had observed the two men when they first came up and that they were intoxicated; that they asked him when the last car would leave for Los Angeles and he told them at 12:07; that they then inquired where they could get lunch and he pointed out a lunch counter to them, which they entered; that they did not leave the lunch stand until after the last train had gone, and when they came out he told them that their train had gone, and that the train which was approaching was not going to Los Angeles. Dombroska in his testimony said, referring to this conversation with the policeman: "I don't remember whether he told me that that car was not going to Los Angeles, that the last car had gone to Los Angeles. I have had a conversation with him, but I don't know if I spoke to him about any car, what time she was going to leave." This statement by Dombroska may be taken as an admission of the truth of what the officer testified to regarding the inquiries made of him by the two men, and of his responses thereto. Dombroska testified that he and Kolb saw a train approaching from the north consisting of several cars—the fact was shown by other testimony without dispute that it was a four-car train—and that on the front of the train was a sign bearing the words "Los Angeles"; that the train as it approached the point marked as the stopping-place by the sign on the post, slowed down to nine or ten miles an hour; that pursuant to an understanding between him and his friend he attempted to get on the front platform of the first car, while Kolb made a like attempt on the second platform of the same car. Dombroska testified that he got on safely and observed that the car had increased its speed with a jerk, at which moment he observed his friend Kolb fall.

The train continued without stopping until a switch was reached, where Dombroska alighted and returned to the place where Kolb had attempted to board the train, and found that he had been badly injured, his legs having been cut off by the wheels of the car and from which injuries he later died. The operatives of the train testified that the train was out of service at the time of the accident, on its way to the car barns, and that the only sign displayed was a sign reading, ''Take Next Car''; that one of the conductors stood upon the front platform and, as the train passed the stopping place at Pier Avenue, motioned toward the sign to the several people who were standing there, and at the same time called out that the train was ''out of service.'' It would seem also from the whole of the testimony, a portion of which only is referred to, that both Kolb and Dombroska were intoxicated. However, even giving full credit to the strongest testimony introduced by the plaintiff, to wit, that of Dombroska, and leaving out of consideration all testimony which conflicts therewith, we are of the opinion that from that evidence no reasonable deduction can be drawn which tends to establish the charge that the defendant was negligent; and if we assume that the evidence tends to show a negligent act in the operation of the train, then, without any question in our minds at all, by Dombroska's own statements, the men were guilty of contributory negligence in attempting to board a train of cars moving, as Dombroska said, at the rate of from nine to ten miles per hour. It must be taken as a fact, for Dombroska did not deny the statement of the police-officer witness, that he and Kolb were told by the officer that the last train for Los Angeles had gone, and that the approaching train was not one bound for that city. If the train was one upon which it was intended that passengers should be received at that point, Kolb and Dombroska knew that all they had to do was to wait until it had come safely to a stop before attempting to get aboard. They chose rather to take the risk attending the act of getting aboard the rapidly moving cars, and the resultant injury was one which must be directly attributed to their heedless and negligent conduct. It has been repeatedly held that the court is authorized to take the case from the jury when, upon the whole evidence were a verdict returned in favor of a plaintiff, the court would have felt impelled to set it aside as unsupported by the evidence. The cases are collected and cited in

the *Matter of the Estate of Baldwin*, 162 Cal. 472, [123 Pac. 267].

Upon the motion for a new trial three affidavits were offered, the first one referring to the testimony of the witness Jessica Maloney. This person it appears did not testify as counsel for the plaintiff had understood that she would testify, and the affidavit only showed she had made statements inconsistent with her testimony given at the trial. There was nothing in the facts stated in this affidavit which established any good cause for the granting of the motion. The second affidavit was made by counsel in the case, who averred in general terms that he had discovered evidence which would establish the fact that the train at the time of the accident stopped and then jerked and threw Kolb under the cars. There is no statement in this affidavit as to what particular evidence the counsel could procure upon that point. The third affidavit was made by Charlotte Jackson, who deposed that she was at the place of the accident on the night in question and that she stopped near the sign (which was referred to in Dombroska's testimony); that when the two men started to get aboard, the cars made a short stop and immediately jerked and went on; that the jerk of the car threw the younger man backward and he was run over by the second car. She further deposed that she did not know that any suit was pending until she read an account of the trial in a Los Angeles newspaper, and that she then communicated her knowledge of the case to the attorney for the plaintiff; that the reason she did not appear and give testimony was that she did not know of the suit and was not summoned in the case. It does not appear whether the affiant communicated her knowledge of the case to the counsel before the close of the trial or afterward. For aught that appears by her statements, she communicated immediately upon reading of the trial in a newspaper, and we cannot surmise whether the trial was in progress at that time or had ended. No other showing was made on the part of plaintiff or his counsel as to why this witness was not produced at the trial.

The point is made that after the jury was instructed to return a verdict for the defendant, the verdict was so returned; upon a poll being taken of the jurors, six answered affirming the verdict as returned and six answered that it was not their verdict. The record shows that the court presented a form of

verdict to the jury and directed the foreman to sign the same without the jury leaving the box, and that the verdict was so returned. The effect of the judgment is that of a nonsuit, which might have been entered without any direction requiring the jury to return any verdict in the case. Such being the result, it would seem immaterial whether the jurors agreed with the court or not, as any view held by them in opposition to that held by the court could not be allowed to prevail.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 24, 1916.