[S. F. No. 10147. In Bank.—November 15, 1922.]

FEDERAL MUTUAL LIABILITY INSURANCE COM-
PANY (a Corporation), Petitioner, v. INDUSTRIAL
ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — REHEARING OF CAUSE — ADDI-
TIONAL TESTIMONY—WRIT OF REVIEW.—Under the Workmen's Com-
pensation, Insurance and Safety Act (Stats. 1917, p. 831), the
Industrial Accident Commission may hear additional testimony
on the rehearing of a cause, and an application for a second re-
hearing after the affirmance of the award is not necessary be-
fore seeking a writ of review from the supreme court.

[2] ID.—FURNISHING OF LUMBER HANDLERS—ARRANGEMENT BETWEEN
STEVEDORE COMPANY AND LUMBER COMPANIES—GENERAL EMPLOYER
—LIABILITY FOR INJURIES.—A stevedore company organized by
lumber dealers to furnish them with lumber handlers is the
general employer of the men furnished and its insurance carrier
is liable for injuries received by them in the course of their em-
ployment, notwithstanding they work subject to the sole direction
and control of the lumber companies, where the stevedore company
has the ultimate control over their hiring and discharge, carries
them upon its pay-rolls and pays their wages out of money
received from the lumber companies equaling such wages plus
a percentage thereof as a recompense and plus the estimated
amount of the premium upon the compensation insurance of the
men carried on the pay-rolls and working in the lumber-yards.

PROCEEDING in Certiorari to review an award of the
Industrial Accident Commission. Award affirmed.

The facts are stated in the opinion of the court.

Cooley, Crowley & Lachmund for Petitioner.

A. E. Graupner and Warren H. Pillsbury for Respondent
Industrial Accident Commission.

Walter H. Linforth and Carroll S. Bucher for Pope &
Talbot and London Guarantee and Accident Company, Ltd.

---

1. Right and extent of review of findings of commission, note,
L. R. A. 1917D, 186.

LAWLOR, J.—This is a proceeding in *certiorari* instituted by petitioner, Federal Mutual Liability Insurance Company, a corporation, to review an award of the Industrial Accident Commission in favor of respondent Sarah W. Simmonds, allowed as compensation for the death of Richard E. Simmonds, said respondent's husband.

Decedent had, for a number of years prior to 1916, been employed as a lumber handler for Pope & Talbot, a corporation, one of the respondents herein. From June 1 to July 26, and from August 15 to November 21, 1916, stevedore strikes occurred, during which strike periods decedent left his employment. Because of these strikes certain lumber dealers, including Pope & Talbot, on July 26, 1916, organized the "American Stevedore Company," a corporation. Together with the other lumber companies, Pope & Talbot entered into an agreement with the stevedore company whereby Pope & Talbot agreed to hire all the stevedores used by it "from and through the said American Stevedore Company," and the stevedore company agreed to do all in its power to furnish and supply all the men required by Pope & Talbot to do its work. The term "stevedore," as used in the agreement, was intended to include, and did include, lumber handlers such as decedent, and decedent resumed work under the agreement a few days before the second strike ended. The stevedore company carried the men hired under the agreement upon its pay-rolls, paid their wages, and billed Pope & Talbot at regular intervals. Pope & Talbot paid to the stevedore company a sum of money equal to the wages paid the stevedores used by them, plus ten per cent of their wages as a recompense to the stevedore company; also a sum of money estimated to be the amount of the premium upon the workmen's compensation insurance of the stevedores carried on the stevedore company's pay-roll and working in Pope & Talbot's yard. The latter amount was paid by the stevedore company to petitioner, who was its compensation insurance carrier. Pope & Talbot paid a separate premium to respondent London Guarantee and Accident Company for workmen's compensation insurance covering its regular employees carried on its own pay-roll, not including the men covered by the agreement with the stevedore company. The agreement between the steve-

dore company and Pope & Talbot was not formally renewed subsequent to May 18, 1918, but the parties to it by mutual understanding continued to operate under its provisions.

For the first few months of operation under the agreement, during and after the second strike, the stevedore company exercised immediate direction and control over the hiring and discharging of the stevedores carried on its pay-rolls, requiring the foreman of any of the lumber companies to procure its consent to the hiring of individual stevedores. When labor conditions became normal the stevedore company ceased to exercise immediate direction and control over such hiring and discharging, leaving it to the discretion of the foremen, but it retained the right to resume such direction and control whenever it elected to do so. In practical operation, a lumber company's foreman could hire additional men and place them upon the pay-roll of the stevedore company, or a lumber company might request the stevedore company to furnish it more men, in which case the stevedore company hired the men, placed them on its pay-roll and sent them to the lumber-yard. The stevedore company could transfer the men from one yard to another, but decedent was never taken from the yard of Pope & Talbot. Stevedores were also furnished by it to lumber-yards which had not participated in its organization, and to work on ships as well as in the yards.

When decedent returned to work after the second strike he applied at the yard of Pope & Talbot and was put to work by its foreman. His name was placed and carried on the pay-roll of the stevedore company and was not carried on that of Pope & Talbot. His time, together with that of the other stevedores, was kept by Pope & Talbot's foreman, turned into its office, and by it sent to the office of the stevedore company. The stevedore company furnished Pope & Talbot blank pay-roll sheets for this purpose. Decedent's work was done solely in Pope & Talbot's yard, under the direction of its foreman and in the course of its business. On August 9, 1919, he was instantly killed in a collision between the booms of two cranes in Pope & Talbot's yard, there being no question but that his death occurred in the course of and arose out of his employment.

In addition to finding the facts substantially as we have given them, the Industrial Accident Commission found that

decedent was in the joint employ of the stevedore company and Pope & Talbot; that the former was his general and the latter his special employer; that as both companies carried workmen's compensation insurance, both should be discharged; that as the premium upon the insurance for stevedores working under the agreement was paid by Pope & Talbot to the stevedore company and paid by the latter to its own insurance carrier, who had received the premium in full, and no portion of the premium was paid by Pope & Talbot to its own insurance carrier, respondent London Guarantee and Accident Company, or claimed by it, the death benefit of $4,900 should be paid by petitioner. Pursuant to such findings the award of that amount was allowed, petitioner being given credit for $1,062.33 it had paid before it declined to make further payments upon the ground that decedent was not an employee of the stevedore company.

[1] Respondent urges preliminarily that petitioner should have applied for a second rehearing of the cause before the Industrial Accident Commission before seeking a writ of review from this court. This contention is based on the fact that after the first hearing and the allowance of the award, the commission granted a rehearing, where the award was affirmed, but at which further testimony was received. It is insisted the commission should have been given an opportunity to reconsider its decision based upon this additional testimony. This point is without merit. That the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831), contemplates that additional testimony may be given upon a rehearing is shown by the statement that (p. 874): "If at the time of granting such rehearing it shall appear to the satisfaction of the commission that no sufficient reason exists for taking further testimony, the commission may reconsider and determine the original cause without setting a time and place for such further rehearing. . . .

"(f) If after such rehearing and a consideration of all the facts, including those arising since the making of the order, decision or award involved, the commission shall be of the opinion that the original order, decision or award . . . is unwarranted, or should be changed, the commission may abrogate, change or modify the same." It is further

provided that any party affected thereby may apply for a writ of review within thirty days after the rendition of the decision on the rehearing. Such a course was followed in the case at bar, which is, therefore, properly before this court.

[2]   Petitioner's first contention is that decedent was not shown to be an employee of the stevedore company. With reference to this claim, it is asserted that as it was found decedent was working under the sole direction and control of Pope & Talbot's foreman and for its benefit, he was solely its employee. Several authorities are cited in support of this claim and petitioner contends the case at bar is distinguishable from *Employers' Liability Assurance Co. v. Industrial Accident Commission,* 179 Cal. 432 [177 Pac. 273], cited by respondents, which case also involved the relation of general and special employment and in which several of the authorities cited by petitioner were discussed. In considering this question it is necessary to review the evidence herein to some extent.

William O'Callaghan, yard foreman for Pope & Talbot, testified as follows: "Q. Did you hire Richard Simmonds? A. Yes, sir. . . . Q. Who did you hire him for? A. For the American Stevedore Company. I hire all the men that come there. First when I went to work I hired for Pope and Talbot. . . . Q. Who did you hire them for? A. To work in the yard. It is understood they all have to work for the American Stevedore Company. They all know that." He further stated that since 1916 all the men hired under the agreement are carried on the pay-roll of the stevedore company; that at the time decedent went back to work after the strike there was a crowd of men hired; that "I told the lot of them—I guess he was in the same crowd—that they had to go there [to the stevedore company] before they went to work at all" and that "they could go to work but they had to go to the American Stevedore Company for their money when pay-day came"; that when anyone was hurt, the accident reports were made out and sent to the stevedore company—"They ain't our employees."

H. J. McPhee, manager of the stevedore company, testified the function of that company was to furnish labor rather than direct the performance of the work; that one of the stevedore company's foremen must have consented to de-

cedent's going to work; that all men had to be approved by the stevedore company before they were hired; that there were a number of instances where the stevedore company vetoed the return of men to the yards, although the yards were willing to take the men on again; that the stevedore company had such a right but did not exercise it unless special circumstances were presented; that the actual authority to hire and discharge was in the stevedore company, although as the yards began to run more smoothly after the labor troubles, it let the yard foremen "have most of the say." He, as well as C. E. Helms, secretary of Pope & Talbot, stated he regarded the stevedore company as an independent concern, and not a dummy of Pope & Talbot.

Keeping in view the contract between Pope & Talbot and the stevedore company, already referred to, it cannot be held the finding that decedent was a general employee of the stevedore company was erroneous. Nor can it be questioned that he was a special employee of Pope & Talbot. The evidence shows he worked in its yard exclusively, subject to its entire direction and control in the performance of his duties.

Petitioner contends that as to the stevedores in the lumber yards the stevedore company was but a paying agency, and points out that the record shows it did not move the men from yard to yard, or interfere with the selection of men by the various foremen, whereas with respect to the men working on ships, it hired, discharged, and moved them about from ship to ship and exerted such control over them as would constitute it their employer. But, as already indicated, the evidence shows the stevedore company had the same power to regulate the employment of men in the lumber yards and merely by its acquiescence allowed the yards to exercise it. It was held in *Tucker* v. *Cooper,* 172 Cal. 663, 667 [158 Pac. 181, 182], that "where the defendant [employer] has the right of control, it is not necessary that he actually exercise such control." Petitioner argues that if decedent be held to be an employee of the stevedore company, "then employment agencies may be held to be building the railroads and running the sawmills and logging camps of their patrons to whom they send employees." We do not apprehend that any such result would follow. The stevedore company was organized to furnish stevedores,

under the terms of the agreement; it paid them, it had the right to move them from one yard to another and it had ultimate control over both their hiring and discharge. Such an organization is entirely different from an employment agency, and it is apparent from the record that it was intended to be so.

In this respect the case is similar to *Employers' Liability Assurance Co.* v. *Industrial Accident Commission, supra,* save that there the foreman who directed the work was hired by the general employer. That fact cannot distinguish the case, for there it was found the foreman was also under the direction and control of the special employer. It is insisted that in that case the general employer participated in the labor performed by the special employer, but the findings show that this participation was "by virtue of the contract existing between it [the general employer] and defendant [the special employer]." Such a finding would be equally true of the instant case, for the contracts between the respective employers were practically the same in both cases.

In that case the authorities bearing on the liability of such employers were carefully considered, and while an award against insurance carriers of both employers was there affirmed, the court said: "If we follow our own action in *Ayer* v. *Industrial Accident Commission, supra* [S. F. No. 8106, in which a petition for a writ of review was denied], and the decision in the district court of appeal (second district) in *Kirkpatrick* v. *Industrial Accident Commission,* 31 Cal. App. 668 [161 Pac. 274], holding the general employer liable, and the Massachusetts court in the Scribner case [231 Mass. 132, 120 N. E. 350], holding the special employer, we reach the same conclusion as the New York court did in *De Noyer* v. *Cavanaugh, supra* [221 N. Y. 273, 116 N. E. 992], holding both or either liable." We consider the reasoning of that case sound and although petitioner insists that if decedent was a joint employee, the award should be against both insurance carriers, the case at bar is one where it is proper to hold one employer only.

It is apparent the parties to the agreement intended that the stevedore company should be liable for injuries resulting to employees hired under the agreement, and that the stevedore company recognized it was under such a liability.

This clearly appears from the fact that it included such employees, together with decedent, in the pay-roll which it sent to petitioner, upon which its premium was based, and that these men were not intended to be included in the compensation insurance carried by Pope & Talbot. The accident reports concerning such men were sent to the stevedore company, and McPhee testified that as far as he knew, petitioner paid the compensation for them. In answer to the question, "Did you intend that insurance as a protection to the American Stevedore Company or as a protection to Pope & Talbot, or both? he replied, "Well, to the American Stevedore Company I figured it, and of course we protected Pope & Talbot when they employed them through us."

It is contended the commission had no power to make an award against petitioner solely upon the ground that it received a premium, based, in part, upon decedent's earnings and that "petitioner, unwittingly, was paid premiums on persons not employees of the stevedore company," and *Employers' Liability Assurance Co.* v. *Industrial Accident Commission,* 187 Cal. 615 [203 Pac. 95], is cited in support of the proposition that "a surety company is not estopped to deny liability upon a void obligation by reason of the fact that it has executed the same and received the benefits thereof." However, decedent was shown to be in fact an employee of the stevedore company and it is not claimed the policy issued by petitioner was not intended to cover decedent, but only that he should not have been included on the ground that he was not an employee of the stevedore company.

This being so, petitioner, as insurance carrier for the stevedore company, should pay the award. It was said in *Employers' Liability Assurance Co.* v. *Industrial Accident Co.,* 177 Cal. 771 [171 Pac. 935], that "The right of the commission to make an award against the insurer, where the validity of the policy is conceded, has never been questioned. If the commission may, in any case, make an award against one who has agreed to stand in the employer's place and protect him against claims by his employees, it must have the power to determine all questions of law and fact upon which the liability of the alleged insurance carrier depends." It follows there was no error in the action of the

Industrial Accident Commission in releasing respondent London Guarantee and Accident Company.

The award is affirmed.

Lennon, J., Richards, J., *pro tem.*, Wilbur, J., and Waste, J., concurred.

Shaw, C. J., dissented.