[L. A. No. 8852. Department One.—January 26, 1928.]

HOWARD CLAIRE UMSTED, Appellant, v. SCOFIELD ENGINEERING CONSTRUCTION COMPANY (a Corporation), Respondent.

Halverson & Price and Wallace W. Davis for Appellant.

Haas & Dunnigan and H. E. Forster for Respondent.

SEAWELL, J.—The question involved upon this appeal is whether defendant, Scofield Engineering Construction Company, a corporation, was the special employer of Howard Wilson Umsted, for whose death, alleged to have been caused by the negligence of the employees of said Construction Company, his father, Howard Claire Umsted, plaintiff herein, seeks to recover damages. If the Construction Company was, as it asserts, the special employer of decedent, plaintiff was without right to maintain an action for damages against it for the death of his son, but was limited to

the remedy provided in the Workmen's Compensation, Insurance and Safety Act for injuries resulting in death.

The court below, being of the opinion upon the conclusion of the trial that the evidence as a matter of law established the relation of special employer and employee between the Construction Company and the decedent, made a special finding to the effect that decedent was the special employee of the defendant and that the injuries resulting in his death grew out of and were received in the course of the employment of the said decedent, upon which finding was entered the judgment that plaintiff take nothing by the action.

██ Although the court below did not follow the procedure generally adhered to in such cases and direct the jury to bring in a verdict for the defendant, which would serve as the basis for its judgment, a judgment entered by the court upon the basis of a special finding where the court is of the opinion that the state of the evidence is such that there is only one judgment which can lawfully be rendered, is to be given the same effect as a judgment entered by the court upon a directed verdict. Without regard to the procedure followed, the determination is, in law, the act of the court. The jury merely acts in a ministerial capacity in bringing in a verdict in pursuance of the court's direction. (*Estate of Sharon*, 179 Cal. 447 [177 Pac. 283]; *Gaskill* v. *Pacific Electric Ry. Co.*, 30 Cal. App. 593 [159 Pac. 200]; 24 Cal. Jur. 917.)

The respondent had contracted to excavate and construct a basement for an addition to the New Broadway Department Store in the city of Los Angeles, and at the time decedent received the injuries from which he subsequently died it was engaged in excavating for the basement of said addition to a depth of over sixty feet below the level of the street. By reason of the fact that operations were being carried on during the night, as well as by day, and that much of the work was being done below the surface of the ground, it was necessary that temporary lighting facilities be installed from time to time at such places as they were needed. In addition, large quantities of electrically operated machinery were being used and the services of electricians were required for such work. Decedent, who was eighteen years of age at the time of his death, was an electrician's helper on the regular pay-roll of the Golden State

Electric Company.  The respondent had applied to the said Golden State Electric Company for electricians and said company had directed one C. F. Sims to report upon the job and had later sent decedent to assist Sims.  Sims was a regular employee of the electric company.  While going to a tool-house adjacent to the premises where the excavation was in progress to obtain tools at the direction of Sims, decedent was struck by a large plank which was being used in the excavating and building operations and thus received the injuries from which he died on the following day.

Respondent, in denying appellant's right to maintain an action for damages, relies upon those cases holding that where either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor comes under the control and direction of the other party to whom he has been lent or hired and suffers injury in the course of and in consequence of such direction and control, the relation of both general and special employer exists and the injured employee is entitled to compensation from both the general and special employer in accordance with the provisions of the Workmen's Compensation, Insurance and Safety Act, which affords the exclusive remedy in such cases.  (*Famous Players Lasky Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134 [34 A. L. R. 765, 228 Pac. 5]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 Pac. 273]; *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, 190 Cal. 97 [210 Pac. 628].)  If the workmen lent or hired are under the control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees.  (*Famous Players Lasky Corp.* v. *Industrial Acc. Com.*, *supra.*)  As such workmen may under the common law of master and servant look to the general employer for wages and to the special employer for damages for negligent injuries, so under the workmen's compensation law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards.

By taking the case from the jury and making the special finding that decedent was the special employee of the Construction Company, upon which finding the judgment for defendant was entered, the court below adopted the

defendant's theory of the case. Unless it can be said that, as a matter of law, no other reasonable conclusion was legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal, or a trial court to set it aside, it must be held that the court erred in taking the case from the jury and itself rendering the decision. (*Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 Pac. 38]; *Estate of Caspar,* 172 Cal. 147 [155 Pac. 631]; *Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267]; 24 Cal. Jur. 912.) ▮ We are of the view that the testimony as to material facts regarding the relationship between decedent and the Construction Company, concerning which there is no substantial conflict, is susceptible of the inference that the electrical work of a temporary nature was being done by the electrical company as an independent contractor through its employees Sims and decedent, Umsted; that the jury might have concluded, without abusing the discretion vested in it as the trier of the facts, that the electrical company at no time had surrendered to the Construction Company, nor had the Construction Company exercised, that degree of control over Sims and decedent which would give rise to the relation of special employer and employee between decedent and Sims and the Construction Company, but had itself retained the right to direct and control said workmen, the Construction Company merely indicating the result it desired to have accomplished. (*Pryor* v. *Industrial Acc. Com.,* 186 Cal. 169 [198 Pac. 1045]; *Flickenger* v. *Industrial Acc. Com.,* 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851].)

Since decedent, Howard Wilson Umsted, while working upon the job as an electrician's helper, was directed solely by Sims, the relationship between Sims and the Construction Company would be determinative of the status of decedent as to said Construction Company. If Sims was an employee of an independent contractor, to wit, of the electrical company, and not the special employee of the Construction Company, decedent was likewise not the special employee of said Construction Company. Both Sims and decedent received payment of their wages from the electric company, being paid at a daily rate based on an eight-hour day. They kept a record of their time on time cards, which were "O. K.'d" each day by the timekeeper for the Construction

Company and turned over to the electric company by Sims and decedent. The Construction Company also kept a record of the time said electricians worked. They were expected to report at 8 o'clock each morning, although the regular Construction Company employees commenced work at 7 or 7:30 A. M. The Construction Company paid the electric company on what was known between the parties as a "cost-plus" basis. That is, it paid to said electric company a sum equal to the wages of all electricians who worked upon the job and the cost of all materials furnished by the electric company, and, in addition, a sum equal to fourteen per cent of the amount of said wages and material costs on account of the overhead of the electric company and a further sum equal to five per cent of said labor and material costs to said electric company on account of profit. Since the cost of the electrical work to the Construction Company was dependent upon the amount earned as wages by the electricians, whose wages in turn were dependent upon the number of hours or days they worked, the fact that the Construction Company kept a record of their time is not conclusive evidence of a right to control residing in the Construction Company, for sound business practice would indicate to said Company that it should keep a record of the time worked by the electricians even if it did not possess such control of them as to create the status of special employer and employee.

When asked upon the trial "how or with what means" he was to do the work, Sims replied that Mr. Sayre, who was superintendent of electrical construction for the electric company, directed him. Although it appears from the testimony of Sims given in response to more specific questions, that the only occasions upon which he received any express directions from Mr. Sayre were when Sayre told him in the office of the electric company to go over to the job and do whatever was needed and on the following day when he telephoned to Mr. Sayre and was told to do "anything they wanted to take care of," the jury may well have inferred that the absence of more specific and detailed instructions from Sayre was to be accounted for by the fact that Sims was a skilled electrician, who did not require supervision or control as to the details of accomplishing the task to which he was assigned. It is the right to exercise control, rather than the

mere fact of its exercise, which is decisive. Sims also stated that he had been assisted by several electricians besides decedent on the department store job; that he communicated with the electric company when he needed additional help and it furnished him with the desired assistance; that the electricians supplied their own tools, such as plyers, screwdrivers, and hammers and the electric company provided an acetylene torch; and that a small quantity of electrical materials which the Construction Company had on hand was used and the balance was furnished by the electric company as it was requested by Sims.

Sims further stated that when on the job Mr. La Barr, superintendent of construction for the Construction Company, had directed him as to what was to be done, but not "as to how to do anything." The jury might have inferred that the instructions given by La Barr were merely directions as to the result to be accomplished, such as are required in the nature of things to be given to independent contractors in any case. By reason of the character of the work, it would have been impossible for the duly authorized agents of the Construction Company and the electric company to have agreed beforehand as to the precise work to be done. Although the witness Sayre, superintendent of electrical construction for the electric company, stated that the electricians sent to the job were working under the direction of the Construction Company, other portions of his testimony and the evidence as to the circumstances surrounding the employment, as testified to by other witnesses, would support the conclusion that the control of the Construction Company was only as to the result to be accomplished and that it did not possess such control of the mode of accomplishment as to render it the special employer of Sims and decedent. (See *Stacey* v. *Industrial Acc. Com.*, 197 Cal. 164 [239 Pac. 1072], and *Independence Indemnity Co.* v. *Industrial Acc. Com., ante,* p. 51 [262 Pac. 757].)

The judgment appealed from is reversed.

Curtis, J., and Preston, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.