■ LUCY CARINHA, as Administratrix of the Estate of JOSE CARINHA, Also Known as JOSEPH CARINHA, Deceased, et al., Plaintiffs, v ACTION CRANE CORP. et al., Defendants.—Motions for reargument or for leave to appeal to the Court of Appeals each denied in all respects with $20 costs. Concur—Murphy, P. J., Capozzoli and Lane, JJ.; Lupiano and Markewich, JJ., dissent in the following memorandum by Lupiano, J. All parties to this litigation (with the exception of defendant Drott Co., the manufacturer of the crane, as to which defendant the complaint was dismissed on consent, and defendant T. J. Burke & Sons, Inc., the distributor of the crane, as to which defendant the action was discontinued prior to trial) seek in one fashion or another to obtain further appellate review before the Court of Appeals. The motion papers and, indeed the papers in opposition, are permeated with expressions relating to the "gravity and novelty" of the issues of law determined by this court. It is with this observation that the following in-depth analysis of the pending motions is presented. Defendant Westbury S. & S. Concrete Co., Inc., asserts through counsel in its motion for leave to reargue certain aspects of this court's determination or, in the alternative, for leave to appeal to the Court of Appeals: "All of the classic reasons exist for the granting of permission to appeal to the Court of Appeals. This court's opinions address a complex of issues of law. All are novel and of first impression. All were never before passed upon by the Court of Appeals. All have great economic impact upon the construction industry and the liability

and workmen's compensation insurers which insure such industries, liabilities, and, of course, in turn, upon the ultimate consumer who in the end does the paying. At least one issue of law has been addressed and resolved in a contrary manner by at least one other Appellate Division (*Tilkens v City of Niagara Falls,* 52 AD2d 306); and has, furthermore, already been marked as deserving of the Court of Appeals' attention by both the Court of Appeals itself (see *Kappel v Fisher Bros., 6th Ave. Corp.,* 39 NY2d 1039) and by the Appellate Division, Third Department (see *Allen v Cloutier Constr. Corp.,* 56 AD2d 348) whose prior opinion in *Rocha v State of New York* (45 AD2d 633) is, at least partially the foundation upon which this court's holdings rest." It should be noted that the Third Department has recently granted permission to appeal in the *Allen* case. These representations made by Westbury's counsel are correct. Defendant Turner Construction Co., the general contractor, in opposing defendant Westbury's application does admit that our determination did "finally" determine some of the issues and argues that it would like to see the Court of Appeals "review at this time the determinations of law made by this Court." Turner requests that if this court does grant leave to appeal on one or more issues, then it also be granted leave to appeal relating to section 240 of the Labor Law liability. It appears that since the interlocutory judgment as to defendants Turner Construction Co. and Government Employees Insurance Co., Inc. (Geico), and over and against Plainview S. & S. Concrete Co., Inc., S. & S. Concrete Corp. and Westbury S. & S. Concrete Co., Inc. (the S. & S. companies), and Harrington is a judgment final as to liability only, the Court of Appeals may review it upon permission granted by this court. This court has the power to send up for review that portion of the interlocutory judgment or order, which is not remanded for a new trial, but is fully decided at the Appellate Division level (see *Aridas v Caserta,* 41 NY2d 1059; *Harris v Village of East Hills,* 41 NY2d 466; *Halloran v Virginia Chems.,* 41 NY2d 386; see, also, Cohen and Karger, Powers of the New York Court of Appeals, [rev ed], pp 227-228). On application for leave to appeal, further appellate review by the Court of Appeals may not be obtained from that part of this court's order which directs a new trial, but this court has full power to grant permission to appeal from that part of its order which affirms the trial court's interlocutory judgment. As Westbury's counsel so ably notes: "Plaintiffs themselves apparently agree with this position * * * for plaintiffs have appealed to the Court of Appeals as of right * * * from that portion of this court's order which affirms the interlocutory judgment dismissing their amended complaint against all of the S. & S. Companies." Defendants Geico and the "S. & S. companies" move for reargument or leave to appeal, urging that "in fact and in practicality" certain issues should be decided by the Court of Appeals prior to a new trial. Among those issues are the liability of Geico and Turner Construction Co. under section 240 of the Labor Law and the availability to them of the workmen's compensation defense if negligence causing section 240 violation is attributable to fellow employees of the injured parties. Plainview S. & S. Concrete Co., Inc., and S. & S. Concrete Corp. oppose in part Westbury S. & S. Concrete Co., Inc.'s, motion for reargument in that they contend that common-law indemnity and contractual indemnity may "stand side by side" although Westbury argues to the contrary. Plaintiffs do not dispute that they have taken an appeal as of right from this court's determination respecting the interlocutory judgment appealed from. Plaintiffs oppose the numerous motions by the various defendants for reargument or, in the alternative, leave to appeal to the Court of Appeals on the ground that without a stipulation for judgment

absolute on the part of the various defendants, this court is deprived of jurisdiction to grant leave to any of the defendants to obtain further appellate review. On the record herein and on the basis of this court's determination, it is concluded that the requests for permission to further appeal to the Court of Appeals from our determination insofar as the interlocutory judgment appealed from is concerned, made by defendants Turner Construction Co., Plainview S. & S. Concrete Co., Inc., Geico, S. & S. Concrete Corp. and Westbury S. & S. Concrete Co., Inc., should be granted. The issues involved were all issues of law finally determined by this court insofar as liability between the parties is concerned. The status of defendants Action Crane Corp. and John Harrington must be treated differently. Defendant Action Crane Corp. in its motion to reargue points out that the record herein contains over 3,000 pages and that it is possible that some pertinent testimony may have been overlooked. They also point out that the trial was a lengthy one (26 days) and was presided over by an experienced and scholarly jurist, the late Justice Chimera. Despite the strenuous assertions by Action Crane Corp. and my own personal reflections on what I perceive to be the obvious merits of those assertions, Action's arguments have failed to persuade the majority to alter their position. Although it is clear that all of the other parties should be in one fashion or another before the Court of Appeals on further appellate review, defendants Action Crane Corp. and John Harrington are forestalled from obtaining such review because this court is without jurisdiction to grant leave to appeal as this matter has been remanded for a new trial with respect to the status of Harrington as an *ad hoc* employee of certain defendants. Therefore, unless Action Crane Corp. and Harrington stipulate to judgment absolute, they are frustrated in seeking further appellate review. Study of the varying opinions of the members of the Bench which determined this appeal clearly demonstrates that the court was closely divided on the issue of whether the employment status of Harrington was a question of law or one of fact. Common sense dictates that this matter should go before the Court of Appeals in a whole and not a partial sense. The minority view the employment status of Harrington when limned against the extensive trial record herein and the undisputed testimony to be a question of law ripe for determination by the court. The majority simply viewed that issue as one of fact, properly referable to a jury. If this matter were to go before the Court of Appeals as a whole, then that court would be afforded the opportunity to determine for itself whether the employment status of the crane operator was a question of law or of fact. However, as noted above, defendants Action Crane Corp. and Harrington are frustrated in their endeavor to secure further appellate review without having to stipulate to judgment absolute. There remains for consideration that branch of the motion of Action Crane Corp. and Harrington wherein they seek reargument. It is beyond cavil and not disputed by any of the litigants or any member of this Bench that the terms of the lease contract entered into between Action Crane Corp. and S. & S. Concrete Co., Inc., are unambiguous. Justice Capozzoli in his majority opinion states that *"in view of the specific terms of the lease contract* entered into between Action and S. & S. Concrete, Harrington, at the very time of the accident, was still representing Action" and *"under the terms of the contract,* Action not only leased the equipment, but also 'furnishes operational personnel to the lessee.' Obviously, since Action reserved the right to furnish its own operator, it must be held to have represented to the lessee that this operator, Harrington, was competent and able to perform the duties which were required to be performed under the contract" (empha-

sis supplied). In effect, the court construed the terms of the lease agreement. Further, Justice Capozzoli acknowledges that while Harrington was operating the crane at the job site, he was subject to the instructions, that is, the control of the S. & S. defendants. However, he concludes that "this would be true only after the crane had been properly placed in a safe and stable position, ready to do the work for which it was hired *and for which the operator was furnished by Action"* (emphasis supplied). This legal conclusion is buttressed by Justice Capozzoli's construction of the terms of the lease contract, which construction and legal reasoning occupies most of his opinion. Repeated reference is made to the language in the lease agreement in the case at Bar. The absence of such language in the lease agreement in *Szarewicz v Alboro Crane Rental Corp.* (50 AD2d 770, affd 40 NY2d 1076) is noted. Justice Capozzoli unequivocally declares: "the operator failed to erect the crane in a stable position" and "It is clear from the evidence that the toppling over of this crane was due to the improper placement of same by the operator and because of his negligence and incompetence." "The construction of a plain contract, that is, one which is clear and explicit in its terms, involves only a question of law, and is a matter for the court to determine from the terms themselves" (10 NY Jur, Contracts, § 190). It is the majority's conclusions of law based on a question of law (the construction of the lease agreement herein) which prompted the determination that a question of fact was presented. This question of fact was phrased by Justice Capozzoli as follows: "whether, when the accident happened, the operator, Harrington * * * was still performing the work *which was his duty to perform for the lessor,* viz.: erecting the crane in a safe and stabilized position" (emphasis supplied). The voluminous record on appeal herein contains few conflicts in testimony. The views of the majority are predicated on the assumption that Harrington was in the general employ of Action Crane Corp. and that under the doctrine of special employment, the issue of whether Action Crane Corp. retained residual authority over Harrington or knew of or was in a position to know whether he was incompetent, are issues of fact on this record which should have been submitted to a jury. In my dissenting opinion on this appeal, I did not concern myself with the issue of whether Harrington, the crane operator, was in the general employ of Action Crane Corp. because I viewed the record as demonstrating that the crane operator was at the very least a loaned servant in the special employ of the concrete subcontractor, even assuming the crane operator to be in the general employ of Action. Presiding Justice Murphy in his opinion concurring in part and dissenting in part, did not concern himself or make any specific statement regarding the issue of whether or not the crane operator was in the general employ of Action Crane Corp. Justice Capozzoli in his opinion inferentially concludes that Harrington was in the general employ of Action. In support of this proposition, he notes a statement given by Harrington at an examination before trial whereby he declared that he was employed by Action. Review of the record discloses that the trial court admitted this statement for the purposes of credibility but not on the issue of proof of general employment. The basis of the motions for reargument by the crane lessor, Action Crane Corp. and by the crane operator Harrington, is addressed to the issue of whether the crane operator was in the general employ of the crane lessor. Study of the record will disclose that there is uncontradicted testimony which warranted the Trial Justice in holding at the end of the case that, as a matter of law, the crane operator was not in the general employ of Action Crane Corp. This testimony is set forth approximately at the following pages of the

record: pages 295-313, 482-490, 517-527, 547-573, 590-595, 645-648, 1457-1468, 1555-1587. The testimony of the crane operator and of Mr. Wheeler, the president and manager of Action Crane Corp., is to the effect that Harrington is a member of Local 138 of the International Union of Operating Engineers. He is assigned by the local to operate cranes when a crane operator is needed. Any crane lessor calls the local and requests an engineer. The union hall is equivalent to a hiring hall. Harrington, at his option, put "recall" on his out-of-work card. This means that when work is available, the crane operator is agreeable to working for the same company that dispatched him on the previous job. This formed the basis of the continuing relationship between Harrington and Action Crane Corp. There was testimony that the crane operator worked for the different general contractors and subcontractors through Action Crane Corp. when Action Crane Corp. leased its cranes. Harrington obtained his engineer's license in 1969 and was operating Action's cranes up to 1973, which was subsequent to the accident herein. Action Crane Corp. on occasion would hire Harrington to do maintenance work on its rigs and on those occasions Action would pay Harrington. Also, on "unloading jobs", as compared with construction jobs, Action Crane Corp. would pay Harrington directly. On construction jobs, the contractor and not Action Crane Corp. would pay Harrington's wages. There was testimony that Action Crane Corp. could not fire Harrington under any circumstances. In situations where Harrington was working directly for Action Crane Corp., that is, Action was paying him directly, and he was performing maintenance work or unloading work for Action Crane Corp., or in a situation where a bare crane rental was not involved, but Action Crane Corp. was supervising the work of the operator directly, if Harrington was unsatisfactory, Action could complain to the union which would send an investigator to ascertain the facts and recommend whether the crane operator could be taken off the job. Where there was a bare crane rental, such as existed in this case, Action Crane Corp. had no control with respect to firing or removing the crane operator. The only party who had the right to complain to the union was the contractor. When the contractor complained to the union, the standard procedure again was for the union to send someone to investigate the facts of the complaint and to make a conclusion based thereon. It was further pointed out that the union had the power to prevent the crane operator from quitting, that is, from refusing to work for a particular crane lessor. Where the crane operator refused to work for that lessor, he had to make a complaint with the union and obtain its approval before he could refuse to work on that lessor's equipment. As Action Crane Corp. was not the general employer of Harrington and could not fire or discharge or prevent him from operating his crane at the time of the accident, and in view of the contractual provisions of the clear and unambiguous lease agreement, it is clear that under the circumstances presented by this record no basis exists for predicating liability against Action Crane Corp. In-depth research has disclosed that where a general contractor has complete control over the operation of a crane with respect to a building under construction and the operator was assigned to the crane by unions, and, further, the general employer of the operator was reimbursed by the general contractor, the operator is regarded as an employee of the general contractor under the loaned servant doctrine (*Gundich v Emerson-Comstock Co.*, 24 Ill App 2d 138).[1] With respect to the leased contract

---

1. In *Blandino v Brown Erection Co.* (341 So 2d 577 [La]) it was observed: "The defendants' crane operator, who was 'leased' with the crane, was under the supervi-

between the parties herein, the key is what is the true intent of the contract. Here, the contract is clear and unambiguous and its intent is for the court to determine. Where a contract is one of rental of equipment with operators, it has been observed that: "Generally the operator of a machine which has been hired with operator is the employee of the owner of the machine. However, under certain conditions where the person utilizing the services of the machine and operator exercises complete control and direction of the operation of the machine the operator may be considered the employee of that person" *(Berg v Rosefsky,* 202 Pa Super 598, 600). The duty of the operator, Harrington, in this case was to employ the crane as directed by the foreman, and it was in pursuance of an order of the foreman, which order the foreman was entitled to give, that the operator did the thing which it is alleged resulted in the injury to plaintiffs.[2] Even assuming the contract of hiring required the furnishing of a competent servant, that is, a

---

sion and control of the foreman of plaintiff's employer who was directing the crane operator for the purposes of the lift. The crane operator was legally a borrowed employee of plaintiff's employer" (p 579). It should be noted that this is not a situation where the crane was defective. In *Truitt v B & G Crane Serv.* (165 So 2d 874 [la]), the crane operator leased the crane and crane operator, who was the owner's regular employee (in our case the crane operator was not a regular employee and was held by the trial court, as a matter of law, to be not in the general employ of the crane owner because he came directly from the union hall), to the construction contractor. In determining whether the crane operator was a borrowed servant of the general contractor, the court noted that: "The question is not who can control his general employment but rather who controls his temporary employment" (p 877). While the general contractor could not fire the operator, it could dispense with his services by taking him off the crane or ending the rental agreement on the crane. Further, "When the cranes were put to use in connection with the general contractor's project of erecting a structure, the operators of the cranes came under the absolute supervision and control of [the general contractor]. All the operator did was to use his knowledge in operating the crane and to carry out orders emanating from the employees of the general contractor * * * From an analysis of the facts and circumstances of the case before us, it is perfectly obvious that (1) the work on which the crane was being used was the work of the general contractor; (2) the operator of the crane had to take and took orders from the general contractor's employees and merely carried them out; and (3) the method of erecting the building was entirely under the control of the general contractor, the lessor of the cranes and the operators having no interest therein. Therefore, our holding that the alleged offending crane operator was the employee pro hac vice of [the general contractor] is inescapable" (pp 877-878).

2. In *Richardson v Russom Crane Rental Co.* (543 SW2d 590 [Tenn]) the plaintiff was the sales manager of Mid-South Sales Company which sold certain pipe. As part of the arrangement, the seller agreed to have the pipe brought directly to the premises of the ultimate purchaser. Plaintiff rented a crane and crane operator from defendant to off-load the pipe. Plaintiff instructed the defendant's crane operator to proceed with the off-loading and while the operator was so engaged, a load of pipe fell on plaintiff, injuring him. The crane operator operated the machine subject to plaintiff's direction. The court stated: "Of course, plaintiff did not direct the crane operator in regard to the technical, physical operation of the crane, for plaintiff did not know how to operate a crane * * * The crane operator falls in the category of a loaned servant. At the time of the injury complained of he was not acting as the agent or servant of Russom so as to make Russom answerable for his alleged negligence under the doctrine of respondeat superior" (pp 591-592).

competent operator of the crane on the part of Action, the breach does not constitute actionable tort unless the person from whom the crane operator is hired knew, or, in the exercise of ordinary care should have known, that the crane operator was incompetent, and that incompetency resulted in damage to the person to whom the servant is loaned. This is simply a restatement of the recognized principle that a charge of negligence carries with it an imputation of knowledge or foresight in the breach of a duty charged as distinguished from a mere breach of contract (see *Georgia Elec. Co. v Smith,* 108 Ga App 851). In this regard it should be noted that the lease agreement between the parties contains a specific covenant of the furnishing of competent personnel on the part of the lessee. A similar provision respecting the lessor is not contained in the agreement. This is a salient point. Further, even assuming that Action Crane Corp. as the owner of the rented heavy equipment, to wit, the crane, who supplies an operator for it, is considered to retain control over the actual operation of the equipment so as to protect its interest in the machine, the contract here gives the lessee exclusive control, and the lessee, as noted above, not the lessor, specifically covenants to provide competent personnel to direct operation of the crane (cf. *Richardson v Hardy & Sons,* 182 A2d 901, 903 [Del]). The lessor's intent to relinquish control over the crane operator is clearly spelled out in the lease agreement. Study of the rationale of the majority opinion of Justice Capozzoli discloses an effort to make out a tort cause of action against Action Crane Corp. based not on the negligence of the operator, but on Action Crane Corp.'s own negligence in supplying an incompetent operator. This loses sight of the undisputed fact in the record that the crane operator came from the union hall, was not in the general employ of Action Crane Corp. and was not paid by Action Crane Corp., but by Westbury S. & S. Concrete Co., Inc., the concrete subcontractor. Here, the right of the concrete subcontractor to control the action of the crane operator was not in the nature of a mere general policing of the premises, but was more of a direct authoritative control over the performance of the work. It is well recognized that " 'to escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation.' *(Moss v. Chronicle Pub. Co.,* 201 Cal. 610, 616 [55 A. L. R. 1258, 285 Pac. 88, 91]; *Standard Oil Co. v. Anderson,* 212 U. S. 215 [53 L. Ed. 480, 29 Sup. Ct. Repr. 252].) * * * 'It is the right to exercise control rather than the mere fact of its exercise which is decisive.' *(Umsted v. Scofield Eng. Const. Co.,* 203 Cal. 224 [263 Pac. 799, 801]; *Bartolomeo v. Charles Bennett Cont. Co.,* 245 N. Y. 66 [156 N. E. 98]; 39 C. J., pp. 1274, 1275.)" *(Peters v United Studios,* 98 Cal App 373, 378, 379, cited in *Welborn v Dalzell Rigging Co.,* 5 Cal Rptr 195, 199.) Clearly, on the record herein there was no right to exercise control over the crane operator existing on the part of Action Crane Corp. Obviously, the doctrine of the loaned servant relieves the general master from liability for the servant's negligence only, and does not relieve him from liability for his own negligence in knowingly furnishing an incompetent servant. However, there is no dispute on the record herein that Action Crane Corp. did not have Harrington in its general employ and did not possess any knowledge to the effect that he was incompetent. Indeed, as can be gleaned from the record, there was no demonstration that Harrington, prior to this accident, was incompetent and there was testimony elicited to the effect that his services theretofore were

found to be satisfactory. In *Bartolomeo v Bennett Contr. Co.* (245 NY 66), the plaintiffs as administrators of the estate of Bartolomeo brought an action to recover damages for his death. Bartolomeo was the employee of a firm of contractors known as the Powers-Kennedy Company. That company in connection with the excavation for the construction of an underground railway, leased a steam shovel owned by the defendant. At the contractor's request, defendant in addition to providing the shovel provided an engineer and fireman to run it. The engineer and fireman were in the general employ of the defendant lessor and the defendant continued to pay their wages after they went to work upon the excavation, and also continued to pay the fuel necessary to operate the shovel. The Powers-Kennedy Company directed the engineer of the shovel where to make excavations, but gave no directions as to the details of the work. The Court of Appeals noted: "It was important to the defendant, as the owner of the machine, in order that the life of the machine might be preserved, that the engineer and fireman, in respect to these and other details, perform their work with care, skill and judgment. When originally employed, the engineer and fireman subjected themselves to the orders of the defendant in respect to all such matters and became liable to discharge at the defendant's hands if its orders were disobeyed. In the absence of proof that the defendant, the general employer, surrendered control, in these respects, to the Powers-Kennedy Company, as special employer, it must be presumed that the defendant's power of control continued. *(Charles v. Barrett,* 233 N. Y. 127.) The party possessing the power to exercise such control, rather than the party having authority to designate the place and time for the performance of the work, is the master who must respond for the negligence of the servants" (245 NY 66, 69-70, *supra).* [3] The review of pertinent cases impels the following

---

**3.** In *Scharf v Gardner Cartage Co.* (113 NE2d 717, 720 [Ohio]), the Court of Appeals of Ohio observed: "we pronounce the rule to be that where equipment is supplied under a rental agreement 'fully operated and serviced' at a specified per diem rental and [the supplier of such equipment] as bailor furnishes along with such equipment his own employees to operate the same on the premises of another, such [supplier] as the general employer is not liable for the negligence of such employees, when it is shown that [such supplier] exercised no direction or control of such loaned servants in the manner or way in which the work for which the equipment was supplied was to be done or accomplished, but that the bailee exercised complete and exclusive direction and control over the operation of such equipment and its operators, and further that [such supplier] had no interest in the work being done except for the rental of his equipment so supplied; in such a situation such servants must be regarded as the servants of the party to whom they are loaned, even though they remain in the general employ of the supplier." In *Welborn v Dazell Rigging Co.* (181 Cal App 2d 268, 271-272), the court was concerned with an action against a mobile crane supplier for injuries suffered by the contractor's carpenter who was installing a metal form section when a bucket of concrete suspended from the boom poured on a defectively installed trough which broke loose and fractured the carpenter's leg. The defendant rigging company supplied the crane and an operator and an oiler to the general contractor for a fixed sum per hour. At the conclusion of work each day, the general contractor or one of its representatives signed a "Daily Crane Report" furnished by the defendant rigging company. The following was printed at the bottom of the form" "Work done subject to terms on the reverse hereof". On the reverse side of the form was printed: "It is distinctly understood and agreed that the sole function of Owner is to furnish equipment and/or operators for the use of Customer and that such equipment and operators shall be under the exclusive direction, supervision, and

conclusions. The servant in the general employment of a master may be loaned by the master together with an instrumentality in such a way as to render the person to whom the servant is loaned the special master of the servant and thus relieve the general employer or master from liability for the servant's negligent operation of the instrumentality. It is the right to exercise control rather than the mere fact of the exercise of control which is decisive. Consequently, to escape liability as a general proposition, the original master must resign full control of the servant for the time being. By agreement, the parties can consent that the servant be subject solely to the control and direction of the person to whom the servant is loaned. However, the residual authority which exists in the original master by virtue of the general employment, may, on occasion, serve in such circumstances to predicate liability against the original master. Thus, it has been held in some instances that the original master must also relinquish to the hirer, the power to discharge the servant or remove the servant with respect to the use of the instrumentality. The record herein contains uncontradicted testimony by the general construction engineer for the "S. & S." defendants (Mr. Dayton H. Greatsinger) and by defendant Harrington, that Harrington was paid by "S. & S." defendants while he was greasing the crane at the Action yard prior to transportation to the job site and while Harrington transported the crane to the job site—all before the crane was placed and operated at the job site. Harrington, upon arrival at the site, immediately came under the supervision and obeyed the instructions of the "S. & S." foreman, Mr. Garrido. Plaintiffs' expert witness, Mr. Shapiro, Harrington, and the "S. & S." construction superintendent all testified that the "S. & S." defendants had a duty with respect to the placement of the crane in a safe and stable position. Action Crane Corp. in its motion to reargue points out that despite the majority's assumption that Harrington was in the general employ of Action, "S. & S." general construction engineer and the "S. & S." bookkeeper *both* testified that Harrington was considered by them as being sent directly from the union. This testimony was confirmed by Action's president to the effect that Harrington's assignment to Action's equipment was by the union. Finally, Action points out that the Court of Appeals has three times determined that, as a matter of law, the operator of a leased crane was the *ad hoc* employee of the lessee (citing *Szarewicz v Alboro Crane Rental Co.,* 40 NY2d 1076; *Swersky v Welsch,* 12 NY2d 952; and *Dicenzo v New York Shovel & Crane Corp.,* 308 NY 871). In conclusion, on the basis of the record herein and on the above observations, it is beyond cavil that the motions of defendants Action Crane Corp. as crane lessor, and John Harrington as the crane operator, for reargument should be granted to the extent that this court specifically address the issue of whether Harrington was in the general employ of Action Crane Corp. and upon such

control of Customer during performance of this Work Order." The court observed that the crane operator, being aware of the danger to which the carpenter was exposed, positioned a load of concrete over him to be released. The rigging company contended that the crane operator was the servant of the contractor at the time of the accident, which assertion was based on the statement printed on the "Daily Crane Report". The court held that the rigging company did not relinquish full control over the operator of the crane to the contractor. It was noted that the rigging company was paying the operator's wages at the time of the accident and that only the rigging company had the exclusive right to discharge the operator. Therefore, the court concluded that the crane operator was only partially under the control of the contractor.

reargument, it be concluded, as a matter of law, that Harrington was not in the general employ of Action Crane Corp. Having obtained this result, defendants Action Crane Corp. and John Harrington, together with the remaining defendants who have moved in one fashion or another for leave to appeal to the Court of Appeals, should be granted such leave. The entire appeal on this lengthy, detailed and articulated record would thus be ripe and, indeed, would mandate further appellate review by the Court of Appeals.[4] The foregoing analysis of the various motions by the defendants to obtain reargument, or, in the alternative, to obtain leave to appeal to the Court of Appeals, is to be viewed as an addendum and supplement to my prior dissenting opinion in this appeal.

## (September 29, 1977)

---

4. If this matter were to go before the Court of Appeals as a whole, then the Court of Appeals would be afforded the opportunity to determine for itself whether the employment status of the crane operator was a question of law or of fact. Should the Court of Appeals determine that the issue was properly determined as one of law, then there would be no need for a new trial. In this connection, note is taken of the fact that in certain circumstances the vote of this court has departed from the underlying rationale for the purposes of forming a clear consensus and allowing full review by the Court of Appeals (see *Matter of Rothko,* 56 AD2d 499, 505-506). Indeed, on occasion, this court has utilized a motion to reargue as a vehicle to change a determination from one "upon the law and the facts" to one "on the law" to permit further appellate review (see *People v Bell,* 45 AD2d 362). The unique circumstances presented on this record, viewed in the context of the disparate opinions issued by this court in this appeal, impel the conclusion that a similar result should obtain on the instant motions to reargue. Such a result, i.e., permitting further appellate review, would comport with common sense and uphold the fine tradition of this court respecting fairness to the litigants who come before our august tribunal. Nevertheless, such result has not been achieved.