[L. A. No. 25428. In Bank. Sept. 18, 1959.]

EMMETT W. McFARLAND, Appellant, v. VOORHEIS-TRINDLE COMPANY (a Corporation), Respondent.

Rose, Klein & Marias, Victor C. Rose and Robert P. Docke-ray for Appellant.

Ernest L. Graves as Amicus Curiae on behalf of Appellant.

Von Herzen & Laidig, Samuel L. Laidig and C. P. Von Herzen for Respondent.

THE COURT.—This is an appeal from a judgment for the defendant notwithstanding a verdict for $75,000 in favor of the plaintiff for damages for personal injuries and from an order granting a new trial.

In May 1954 the defendant entered into an oral contract with the Los Angeles Tractor and Equipment Company for the clearing and grading by the tractor company of 14 acres of hilly, brush-covered land owned by the defendant. The tractor company agreed to furnish equipment and operators to the defendant on an hourly rental basis. The plaintiff, a master mechanic and equipment operator of several years' experience, was then employed by the tractor company and was at all times on its pay roll. He was ordered by the tractor company to work at the defendant's job site. His duties there included the repair and maintenance of earth-moving and grading equipment and the operation of such equipment when he was not engaged in repair or maintenance work. No supervisory personnel was provided by the tractor company. The supervision of the clearing and grading work was entrusted to McDaniel, an employee of the defendant. On June 19, 1954, approximately one month after the plaintiff began working at the defendant's site, he was instructed by McDaniel to cut and clear a brush-covered hillside within an area marked by surveyor's stakes. The plaintiff, after moving downhill on his bulldozer, found he lacked sufficient traction to back up. He got off his machine and examined the ground behind and around him. He could not, however, see ahead because of the thickness of the underbrush. McDaniel was standing approximately 50 feet below the plaintiff. The plaintiff signaled McDaniel that he wanted to continue downhill. McDaniel signaled him to stop. Another operator then cut a bank below the place where the plaintiff's bulldozer was stopped. McDaniel then signaled the plaintiff to proceed down the hill. After moving forward about three or four feet, the machine's right track fell into a "sudden drop." It overturned, severing the plaintiff's right leg below the knee and fracturing his left ankle.

The jury impliedly found against the defendant on the issues of negligence and contributory negligence and assessed

the plaintiff's damages at $75,000. The only ground suggested in support of the granting of the judgment notwithstanding the verdict is that the plaintiff was a special employee of the defendant as a matter of law and that for this reason the plaintiff's exclusive remedy was workmen's compensation. The principal question presented in this respect is whether there was substantial evidence to sustain the implied finding of the jury that plaintiff was not a special employee of the defendant.

Workmen's compensation has been paid to the plaintiff by the tractor company's carrier. ■ Where a relationship of general and special employment obtains, however, the injured workman can look to both employers for compensation benefits. (*Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130 [156 P.2d 926]; *National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215 [143 P.2d 481].) ■ If workmen's compensation is available, it constitutes, with an exception not pertinent here, the workman's sole remedy against the employer. (Lab. Code, § 3601.*) Thus where there is dual employment the workman is barred from maintaining an action for damages against either employer.

■ This conclusion is not altered by the fact that in 1947, after the cases cited above were decided, the Legislature enacted section 11663 of the Insurance Code, which provides: "As between insurers of general and special employers, one which insures the liability of the general employer is liable for the entire cost of compensation payable on account of injury occurring in the course of and arising out of general and special employments unless the special employer had the employee on his pay roll at the time of injury, in which case the insurer of the special employer is solely liable. For the purposes of this section, a self-insured or lawfully uninsured employer is deemed and treated as an insurer of his workmen's compensation liability."

There would appear to be three reasons for deciding that section 11663 does not abrogate the rule of the Industrial Indemnity Exchange and National Automobile Insurance cases. First, that section expressly provides "As between insurers . . . . " That language indicates that the section is directed only to adjusting the conflicting claims of insurers of multiple employers. Second, the last sentence of that

---

*Section 3601 of the Labor Code provides: "Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in section 3706, the exclusive remedy against the employer for the injury or death."

section would be redundant if it were interpreted to apply to proceedings between workmen and their general and special employers. Third, such an interpretation could, in at least one situation, result in the denial of any compensation at all to an injured employee. This situation could arise if an employee were injured in the course of the general employer's business only and the injured employee was on the special employer's pay roll. Such an employee could not recover against the special employer because his injuries did not arise in the course of the special employment. (*Argonaut Ins. Exch.* v. *Industrial Acc. Com.,* 154 Cal.App.2d 703 [316 P.2d 759].) Nor could he recover compensation against the general employer because section 11663 would require that if the employee is on the special employer's pay roll, the special employer would be solely liable. In the Argonaut case the court said that this section applies only between insurers, that it does not affect the employees' rights against the employers, and that it does not purport to abrogate the rule that where both the general and special employer exercise some control, the injured employee can claim workmen's compensation from both. (See *Argonaut Ins. Exch.* v. *Industrial Acc. Com.,* 154 Cal.App.2d 703, 707 [316 P.2d 759].)

It follows that if there was substantial evidence to sustain the jury's implied finding that plaintiff was not a special employee of defendant, the judgment notwithstanding the verdict should be reversed.

In reviewing the judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the verdict. We are bound by the familiar rule stated in *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 649, 650 [122 P.2d 576] : "It appears to be the well-established law of this state that the power of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its power to grant a nonsuit. (Code Civ. Proc., § 629; *Card* v. *Boms,* 210 Cal. 200 [291 P. 190] ; *Hunt* v. *United Bank & Trust Co. of California,* 210 Cal. 108 [291 P. 184] ; 7 Cal.Jur. 10-Yr. Supp. 268, § 65c.) Therefore, a motion for judgment *non obstante veredicto* may properly be granted 'when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms, supra,* at p. 202.) "

On the question of what facts give rise to a special employment relationship, this court stated in *Industrial Indem. Exch.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 130, 135: "The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship. (*Riskin* v. *Industrial Acc. Com.,* 23 Cal.2d 248 [144 P.2d 16] ; *Guarantee Ins. Co.* v. *Industrial Acc. Com., supra,* [22 Cal.2d 516 (139 P.2d 905)] ; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 P. 820].)

And, although in distinguishing between an employment and an independent contractor relationship it has been said that 'The test of "control". . . means "*complete* control" ' (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 811 [159 P. 721] ; *S. A. Gerrard Co.* v. *Industrial Acc. Com.,* 17 Cal.2d 411, 414 [110 P.2d 377] ), it is settled that 'a general and special employment relationship is present if there exists in each some power, not necessarily complete, of direction and control.' (*National Auto Ins. Co.* v. *Industrial Acc. Com.,* 23 Cal.2d 215, 219 [143 P.2d 481]. See also *Diamond D. etc. Co.* v. *Industrial Acc. Com.,* 199 Cal. 694 [260 P. 862] ; *Famous P. etc. Corp.* v. *Industrial Acc. Com.,* 194 Cal. 134 [228 P. 5, 34 A.L.R. 765].) " As indicated, the control need not be exercised. It is sufficient if the right to direct the details of the work is present. (*Umsted* v. *Scofield Eng. Const. Co.,* 203 Cal. 224 [263 P. 799] ; *Miller* v. *Long Beach Oil Dev. Co.,* 167 Cal.App.2d 546 [334 P.2d 695] ; *Ridgeway* v. *Industrial Acc. Com.,* 130 Cal.App.2d 841 [279 P.2d 1005].)

The fact that instructions are given as to the result to be achieved does not require the conclusion that a special employment relationship exists. In *Umsted* v. *Scofield Eng. Const. Co., supra,* 203 Cal. 224, it was noted at page 230 that "The jury might have inferred that the instructions given by La Barr [defendant's superintendent] were merely directions as to the result to be accomplished, such as are required in the nature of things to be given to independent contractors in any case. By reason of the character of the work, it would have been impossible for the duly authorized agents of the Construction Company [defendant] and the electric company [decedent's employer] to have agreed beforehand as to the precise work to be done. Although the witness Sayre, superintendent of electrical construction for the electric company, stated that the electricians sent to the job were working under the direction of the Construction Company, other

portions of his testimony and the evidence as to the circumstances surrounding the employment . . . would support the conclusion that the control of the Construction Company was only as to the result to be accomplished and that it did not possess such control of the mode of accomplishment as to render it the special employer of Sims and decedent. [Citing cases.]'' ■ The power to discharge workmen is strong evidence of the existence of a special employment relationship. (*National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215, 220 [143 P.2d 481].) The payment of wages is not, however, determinative. (*Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516, 520 [139 P.2d 905].) ■ The paramount consideration appears to be whether the alleged special employer exercises control over the details of the work. Such control strongly supports an inference that a special employment exists.

■ The evidence on the issue of control admits of different inferences. The record shows that the plaintiff was at all times on the tractor company's pay roll. The power to discharge equipment operators remained in the tractor company. If dissatisfied with a worker, the defendant could, and on one occasion did, return him to the tractor company and obtain a replacement. No control was exercised by the defendant over the plaintiff in the performance of his duties as mechanic and repairman. Nor does it appear that the defendant instructed the plaintiff or other operators in the running of their equipment. The defendant's superintendent, in assigning work, designated the job to be done, such as a road to be cut or brush to be cleared within surveyed lines, and the details of that work were left to the judgment of the individual equipment operators. It appears that the plaintiff was operating under such instructions when the accident occurred. Although the plaintiff testified that he regarded McDaniel's signal to proceed downhill as an ''order,'' he later stated that the signal was ''one of information''; that he relied on McDaniel's signals because McDaniel could see the terrain in front of the bulldozer and not because McDaniel was the superintendent on the job. Q. ''In other words, it had nothing to do with his being a foreman on the job; it was just the fact that he could, in your opinion, see the area in front of you, is that right?'' A. ''Yes, sir. Otherwise he wouldn't have given me the signal.''

*Miller* v. *Long Beach Oil Dev. Co., supra,* 167 Cal.App.2d 546, is in point. There, the plaintiff, a foreman of a con-

struction and maintenance crew, was injured by the collapse of a wall. A judgment notwithstanding the verdict for the plaintiff was reversed on appeal. The plaintiff was employed by the Industrial Suppliers Company. Industrial Suppliers did small construction and maintenance jobs on the defendant's property. The plaintiff was ordered by Industrial Suppliers to follow the instructions of the defendant's field superintendent. His work consisted of supervising unskilled manual labor such as digging ditches and cleaning the concrete foundations of oil well pumping units. His wages were paid by Industrial Suppliers. The defendant's superintendent testified that he outlined the work to be done but that he did not supervise the details of its execution. The court held that the payment of wages by Industrial Suppliers, its retention of the power to discharge the plaintiff, and the lack of direct supervision and control by the defendant sustained the plaintiff's contention that he was not the defendant's special employee. It is true that here, unlike the situation presented in the Miller case, the defendant's superintendent was present and the plaintiff was operating his machine in response to the superintendent's signals at the time of the accident. However, as we have seen, the plaintiff's obedience to those signals was not inconsistent with sole employment by the tractor company.

The defendant relies upon *Department of Water & Power* v. *Industrial Acc. Com.*, 220 Cal. 638 [32 P.2d 354], and *Wessell* v. *Barrett*, 62 Cal.App.2d 374 [144 P.2d 656], as supporting the contention that the plaintiff was its special employee. In each case, the court stressed the element of control exercised by the defendant over the injured plaintiff. The evidence most favorable to the verdict supports the inference that the plaintiff was not a special employee of the defendant Voorheis-Trindle Company. "Unless it can be said that, as a matter of law, no other reasonable conclusion was legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal, or a trial court to set it aside, it must be held that the court erred in taking the case from the jury and itself rendering the decision." (*Umsted* v. *Scofield Eng. Const. Co., supra*, 203 Cal. 224, 228.) The court in the present case erred in granting the judgment notwithstanding the verdict.

A reversal of the judgment notwithstanding the verdict, however, does not dispose of the order granting a new trial.

Section 629 of the Code of Civil Procedure provides in part: "If the court grants the motion for, or of its own motion directs the entry of, judgment notwithstanding the verdict, and likewise grants the motion for a new trial, the order granting a new trial shall be effective only if, on appeal, the judgment notwithstanding the verdict is reversed and the order granting a new trial is not appealed from or, if appealed from, is affirmed."

The review of an order granting a new trial proceeds from a different premise than the review of an order granting a judgment notwithstanding the verdict. As stated in *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358, 359 [170 P.2d 465] : "This court has recently reiterated the settled rule that the granting of a motion for a new trial rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears. All presumptions are in favor of the order and it will be affirmed if it is sustainable on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165, 169 [153 P.2d 338], and cases cited.) The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party. (*Estate of Green,* 25 Cal.2d 535, 542 [154 P.2d 692] ; *Hames* v. *Rust,* 14 Cal.2d 119, 124 [92 P.2d 1010].) The only conflict may be the opposing inferences deducible from uncontradicted probative facts. In such case the trial court may draw inferences opposed to those accepted by the jury, and may thus resolve the conflicting inferences in favor of the moving party, for 'It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [163 P.2d 689] ; *Malloway* v. *Hughes,* 125 Cal.App. 573, 580 [13 P.2d 1062].)" Viewing the evidence in the light most favorable to the moving party, it follows that the order granting a new trial was within the discretion of the trial court.

The judgment notwithstanding the verdict is reversed. The order granting the motion for a new trial is affirmed.

Respondent's petition for a rehearing was denied October 15, 1959.