[No. A071683. First Dist., Div. Two. Dec. 2, 1997.]

ROWENA WEDECK, Plaintiff and Appellant, v.
UNOCAL CORPORATION, Defendant and Respondent.

COUNSEL

Thimesch & Thimesch and Timothy Thimesch for Plaintiff and Appellant.

Hardin, Cook, Loper, Engel & Bergez, Gennaro A. Filice III and Nicholas D. Kayhan for Defendant and Respondent.

## OPINION

KLINE, P. J.—Rowena Wedeck appeals the trial court's grant of summary judgment in favor of respondent Unocal Corporation. On appeal, she challenges the trial court's determination that Unocal was her special employer as a matter of law and that she was, therefore, statutorily barred from bringing a tort action against Unocal for personal injuries received while she was working at Unocal. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1992 Wedeck began working for Lab Support, an agency in the business of placing technical employees with other companies on a temporary basis. In August 1992, Wedeck, who has a bachelor of science degree in chemistry, accepted an assignment through Lab Support to work at the Unocal refinery in Rodeo as a full-time chemist. Amy Conner (formerly O'Shaughnessy), who was the account manager for Lab Support, arranged for Wedeck's work assignment at Unocal. That assignment was confirmed by a letter agreement from Lab Support to Unocal dated August 20, 1992, which set forth the terms and conditions of Wedeck's assignment at Unocal. Paragraph 6 of the terms and conditions stated: "Customer and Lab Support agree that all personnel provided by Lab Support in connection with this Agreement are employees and/or contractors of Lab Support, but that such

personnel shall receive all technical direction from the designated manager of Customer. Customer shall otherwise contact such personnel through Lab Support."

Wedeck worked at Unocal for nearly a year, from August 24, 1992, until August 13, 1993. Unocal paid Lab Support an hourly rate for Wedeck's work, and Wedeck was paid by submitting weekly time cards, supplied by Lab Support and signed by both Wedeck and Unocal, to Lab Support. The time cards included a "Client Agreement" which stated, in part: "We [the client] understand that the supervision of the assigned LSI [Lab Support, Inc.] employee for the agreed upon duties is our (the client's) responsibility. [¶] We further agree to provide any general or specific safety training necessary to perform the assignment . . . ."

At Unocal, Wedeck worked in the chemical laboratory performing analytical tests on various materials and product samples generated by Unocal's refinery. She received training and instruction from Unocal chemists at the start of and, as necessary, during the time she worked at Unocal concerning the work she was performing. Wedeck was required to follow Unocal's procedures as set forth in its chemical laboratory chemical procedures manuals, and she periodically referred to these manuals, which were placed at the locations where she worked within the laboratory, for guidance.

Unocal notified Wedeck of her work assignments in a regular schedule which identified the specific chemical testing and analyses she was to perform during that period. Unocal provided Wedeck with the equipment and tools she needed to perform her job, including safety equipment which was supplied to all temporary chemists working in the laboratory.[1] Wedeck was required to perform weekly quality assurance tests on her work. A Unocal employee in charge of quality assurance would periodically check the log book in which Wedeck had recorded results of her quality assurance tests. Unocal's chemical laboratory supervisor, Dale Iverson, was Wedeck's site supervisor during her time at Unocal.

Other than several phone conversations regarding safety, Lab Support provided no training or instruction to Wedeck regarding her work at Unocal; provided her with none of the tools or equipment necessary to perform her job (other than safety glasses and pamphlets on safety issues); and had no involvement in assigning the work she performed there.

---

[1]Wedeck used her own safety glasses, which she had received from Lab Support, although she understood that she could use a pair of Unocal's safety glasses if she forgot to bring her own. Unocal had a policy of permitting employees to use their own safety glasses and lab coats in the laboratory if these items met the same safety standards as like equipment available to them in the laboratory.

In July 1993, Dale Iverson submitted a service contract requisition which requested that a purchase order be generated to "provide temporary laboratory staffing in accordance with the attached agreement." The August 20, 1992, letter, with its accompanying terms and conditions, was attached to the requisition form. On the reverse side of the purchase order, which was generated by Unocal on July 28, 1993, in response to Iverson's request, was a printed list of terms and conditions; paragraph 16 of those terms and conditions stated that if work is performed on company property, "[s]ervice work is to be entirely under Supplier's supervision, direction and control. Company retains no control over the operative details of Supplier's work. Supplier shall take special precautions to eliminate or minimize risks 'peculiar' to supplier's work."

Neither Unocal nor Lab Support intended the terms on the reverse side of the purchase order to modify or supersede the prior agreement between the two companies. Conner did not read the terms and conditions on the reverse side of the purchase order before signing it, and understood it to be only a written acknowledgment by Unocal of Wedeck's work assignment. Conner had no authority to modify the standard terms and conditions contained in all of Lab Support's agreements with outside companies, including the August 20, 1992, agreement regarding Wedeck.

On July 27, 1994, Wedeck filed a complaint alleging that she suffered personal injuries from exposure to chemicals while working at Unocal's laboratory. Unocal raised an affirmative defense, asserting that it was Wedeck's special employer at the time she allegedly sustained the injuries and that, consequently, the complaint was barred under the workers' compensation exclusive remedy rule pursuant to Labor Code section 3602. Unocal thereafter filed a motion for summary judgment based on this defense, which the trial court denied, having found that the purchase order (Fact No. 42) raised a triable issue of fact as to whether Unocal was in fact Wedeck's special employer.

Unocal then filed a motion for reconsideration of its summary judgment motion. The trial court considered additional evidence submitted by Unocal concerning Fact No. 42 and granted both the motion for reconsideration and the motion for summary judgment, concluding that Wedeck had raised no triable issue of material fact disputing Unocal's status as her special employer. This timely appeal followed.

### Discussion

Summary judgment must be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c);[2] *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) "Because the issue is one of law and exclusively dependent on an interpretation of writings, on appeal from an order granting summary judgment, we exercise de novo review." (*Tana* v. *Professionals Prototype I Ins. Co.* (1996) 47 Cal.App.4th 1612, 1616 [55 Cal.Rptr.2d 160]; see also *Villa* v. *McFerren, supra,* 35 Cal.App.4th at p. 741; *Rosse* v. *DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].) Under section 437c, subdivision (o)(2), "[a] defendant . . . has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."

I.

As a preliminary matter, Wedeck contends the case must be remanded because the trial court granted Unocal's motion for summary judgment without considering all of the evidence bearing on the issue of special employment, instead focusing solely on the meaning of the purchase order. Wedeck plainly misunderstands the court's rulings. When the court initially denied Unocal's summary judgment motion, its order shows that it found—from all of the evidence submitted—one lone triable issue of fact: Fact No. 42 regarding the purchase order.[3] Its subsequent written order granting summary judgment as well as the oral ruling following the hearing on the motion for reconsideration also demonstrate that the court considered all of the submitted evidence before making its decision, but concluded the evidence established that Unocal was Wedeck's special employer and that Wedeck had failed to raise any triable issues of material fact.[4] The trial court's written and oral rulings thus demonstrate that it considered all of the

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]The court stated: "After full consideration of the evidence submitted by the parties, the Court finds that the case of *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242 [250 Cal.Rptr. 718] is dispositive in resolving said motion and the Court further finds that summary judgment should not be granted because there are triable issues of fact raised by Plaintiff's opposition, most particularly Fact No. 42 as set forth below . . . ."

[4]Specifically, the court stated that "Unocal has met its burden of establishing, and plaintiff has raised no triable issue of material fact disputing, Unocal's status as a special employer under *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242 [250 Cal.Rptr. 718] so as to bar plaintiff's action under Workers' Compensation Exclusive Remedy Rule (Labor Code § 3602). . . . The Court's determination in this regard is based upon: the Declarations of Dale Iverson, Angeline Maraj, Carie S. Nebens, Amy Conner, Kendall B. Smith and Lisa L. Hillegas, which together establish that (a) there is no triable issue of material fact regarding

evidence when it found no triable issue of material fact and granted Unocal's motion for summary judgment.

Wedeck's reliance on *Kapitanski* v. *Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 33 [193 Cal.Rptr. 839] and *Albermont Petroleum, Ltd.* v. *Cunningham* (1960) 186 Cal.App.2d 84, 94 [9 Cal.Rptr. 405], in support of her claim that the court failed to consider all of the evidence before granting Unocal's motion, is misplaced. In each of those two cases, the trial court's exclusion of evidence relevant to pending motions for summary judgment was found to be an abuse of discretion. However, in both cases the trial court had refused to consider crucial affidavits or declarations in opposition to motions for summary judgment because they were not timely filed. In the present case, on the other hand, the record shows the trial court did consider all submitted evidence before granting the summary judgment motion.

Accordingly, we reject Wedeck's threshold argument that the trial court failed to consider all of the evidence bearing on the issue of special employment before granting Unocal's motion for summary judgment.

## II.

 Wedeck contends the trial court erred in finding that Unocal was Wedeck's special employer and on that basis granting Unocal's motion for summary judgment.

 In *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1247-1248 [250 Cal.Rptr. 718], the Court of Appeal explained the concept of special employment: "A 'special employment' relationship arises when an employer lends an employee to another employer and relinquishes to the borrowing employer all right of control over the employee's activities. [Citation.] The borrowed employee is ' "held to have two employers—his original or 'general' employer and a second, the 'special' employer." ' [Citation.] In this dual employer situation, the employee is generally limited

---

whether a special employment relationship existed between Unocal and plaintiff Rowena Wedeck under *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242 and (b) the undisputed evidence establishes that Unocal was plaintiff's special employer at all relevant times. [¶] The Court's determination is further based upon a finding that plaintiff has not made a sufficient showing under CCP § 437c in opposition to Unocal's Motion for Reconsideration of Motion for Summary Judgment and Unocal's Motion for Summary Judgment that there are any triable issues as to any material facts." At the conclusion of the hearing on Unocal's motion for reconsideration the trial court explained the basis for its decision to grant the motions for reconsideration and for summary judgment: "What I found to be the triable issue, Fact 42, no longer is a triable issue taking into account all the evidence, so we are—that was the reason for my decision. That triable issue is now subtracted. When you take that triable issue out, that motion must be granted."

to a statutory workers' compensation remedy for injuries he receives in the course of his employment with the special employer; he may not bring a separate tort action against either employer."

The question whether a special employment relationship exists is generally a question of fact reserved for the jury. (*Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168, 175 [151 Cal.Rptr. 671, 588 P.2d 811].) "However, if neither the evidence nor inferences are in conflict, then the question of whether an employment relationship exists becomes a question of law which may be resolved by summary judgment." (*Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1248; see also *Johnson* v. *Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1071 [260 Cal.Rptr. 67].)

■ "Factors relevant to determining whether an employee is the borrowed employee of another include: (1) whether the borrowing employer's control over the employee and the work he is performing extends beyond mere suggestion of details or cooperation; (2) whether the employee is performing the special employer's work; (3) whether there was an agreement, understanding, or meeting of the minds between the original and special employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated his relationship with the employee; (6) whether the special employer furnished the tools and place for performance; (7) whether the new employment was over a considerable length of time; (8) whether the borrowing employer had the right to fire the employee and (9) whether the borrowing employer had the obligation to pay the employee." (*Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1250.) Of these considerations, the primary one in determining whether a special employment relationship exists is whether the special employer has " ' "[t]he right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not . . . ." ' " (*Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at p. 175; *Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1250.)

■ "Circumstances which tend to negate the existence of a special employment relationship include the following factors: the worker is skilled and has substantial control over operational details, the worker is not engaged in the borrower's usual business, the worker works only for a brief period of time, does not use the tools or equipment of the borrowing employer but uses his own tools or the tools of the lending employer and the borrower employer neither pays the worker nor has the right to discharge him." (*Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1250.)

In *Riley,* the plaintiff filed a tort action against defendant Southwest Marine after he was injured while working at Southwest Marine's jobsite as

a temporary employee on assignment from a temporary employment agency, Manpower, Inc. The Court of Appeal affirmed the trial court's grant of summary judgment in favor of Southwest Marine, finding, as a matter of law, that Southwest Marine was Riley's special employer. (*Riley* v. *Southwest Marine, Inc., supra*, 203 Cal.App.3d at p. 1251.) Riley was, therefore, precluded from bringing a separate tort action against Southwest Marine and was limited to a statutory remedy for his injuries. (*Ibid.*)

The court found that the following facts, from Riley's own deposition testimony, unequivocally established that a special employment relationship existed between Riley and Southwest Marine: He agreed to the Southwest Marine work assignment; he was an unskilled general laborer working exclusively at Southwest Marine's jobsite; Southwest Marine personnel trained him, provided his daily job instructions, and supervised his work; Southwest Marine provided all safety equipment and work tools; Riley had worked for Southwest Marine more than briefly, i.e., for over seven months at the time of his injury; and Riley believed Southwest Marine had the power to discharge him. (*Riley* v. *Southwest Marine, Inc., supra*, 203 Cal.App.3d at p. 1250.) "In sum, Southwest Marine had the right to control and direct Riley's activities and the manner in which he performed the work; Southwest Marine did not merely make suggestions of details or cooperation." (*Ibid.*) Furthermore, Riley's evidence showing he was Manpower's employee did not raise a material factual dispute because Riley was in a dual employment situation. (*Id.* at p. 1251.)

The court then rejected Riley's argument that the general rule barring separate tort actions against special employers should not be extended to the labor brokerage situation. "Extensive nationwide case law . . . hold[s] the 'special employment' or 'borrowed servant' doctrine applies to the labor brokerage situation and bars an employee who is injured while on assignment from a labor broker, such as Manpower, from bringing a tort suit against the assigned employer. [Citations.]" (*Riley* v. *Southwest Marine, Inc., supra*, 203 Cal.App.3d at pp. 1251-1252; see also 3 Larson's Workers' Compensation Law (1997) § 48.23, pp. 8-524 to 8-532.)

 In the present case, the undisputed facts show that the primary consideration—whether Unocal had the right to control and direct Wedeck's activities and the manner in which her work was performed—must be decided in favor of Unocal. Wedeck received ongoing training and instruction from Unocal chemists concerning the work she was to perform in the chemical laboratory; she referred to Unocal procedures manuals and followed Unocal's procedures and instructions in performing her work; Unocal provided Wedeck with all of her work assignments in the laboratory; and her

quality assurance tests were monitored by Unocal supervisors for completeness. (See *Kowalski* v. *Shell Oil Co.*, *supra*, 23 Cal.3d at p. 175; *Riley* v. *Southwest Marine, Inc.*, *supra*, 203 Cal.App.3d at p. 1250.)

Wedeck's argument that triable issues remain regarding her factual allegations of self-supervision and technical skill is without merit. First, with respect to the former allegation, Wedeck asserts that the minimal time Unocal chemists spent training her to perform Unocal's work as well as Dale Iverson's inability to recall the specific chemists who trained her or the exact dates he reviewed her work show that a triable issue remains as to her self-supervision. However, neither the brevity of the training she received nor Iverson's inability to remember the day-to-day details regarding supervision changes the undisputed facts that Wedeck understood she would not be supervised by Lab Support and that she was expected to carry out her job duties as she was trained to do by Unocal supervisors, do the work assigned by Unocal supervisors, and perform regular quality assurance tests which were subject to supervisory review. That she performed her job without constant intervention by supervisors does not negate the undisputed fact that she was subject to Unocal's control and direction. "As indicated, the control need not be exercised. It is sufficient if the right to direct the details of the work is present." (*McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 704 [343 P.2d 923]; see also *Kowalski* v. *Shell Oil Co.*, *supra*, 23 Cal.3d at p. 175.)

Similarly, with respect to the technical skill as a chemist Wedeck brought to the job, although most of the relevant cases involve unskilled workers, the record again shows that, regardless of the experience and knowledge she brought with her, Wedeck was trained by Unocal and was subject to Unocal's ongoing direction and control in performing her job. Despite Wedeck's assertion that she had "substantial control over operational details" (*Riley* v. *Southwest Marine, Inc.*, *supra*, 203 Cal.App.3d at p. 1250), the record demonstrates that she was expected to exercise her technical skill in the way dictated by Unocal's systems and procedures. (See 3 Larson's Workers' Compensation Law, *supra*, § 44.32(c), pp. 8-104 to 8-105 ["It should be stressed . . . that the *absence* of exercise of control has seldom been given any weight in showing *absence* of right of control, since the nonexercise can often be explained by lack of occasion for supervision of the particular employee, because of his competence or experience."].)

Wedeck also attempts to refute the evidence of Unocal's supervision of her work by characterizing the direction she received at Unocal as merely informational, arguing that Unocal simply did not exercise the kind of control that would give rise to a special employment relationship. "The fact

that instructions are given as to the result to be achieved does not require the conclusion that a special employment relationship exists." (*McFarland* v. *Voorheis-Trindle Co., supra,* 52 Cal.2d at p. 704.)

In *McFarland,* the plaintiff, a master mechanic and experienced equipment operator, was employed by a tractor company and was operating a bulldozer at the defendant's jobsite when he was injured. (52 Cal.2d at p. 701.) "No control was exercised by the defendant over the plaintiff in the performance of his duties as mechanic and repairman. Nor does it appear that the defendant instructed the plaintiff or other operators in the running of their equipment. The defendant's superintendent, in assigning work, designated the job to be done, such as a road to be cut or brush to be cleared within surveyed lines, and the details of that work were left to the judgment of the individual equipment operators. It appears that the plaintiff was operating under such instructions when the accident occurred." (*Id.* at p. 705.) The Supreme Court concluded that the evidence on the question of control admitted of different inferences and therefore reversed the trial court's judgment notwithstanding the verdict that the plaintiff was the special employee of the defendant. (*Id.* at pp. 705-706; see also *Marsh* v. *Tilley Steel Co.* (1980) 26 Cal.3d 486, 493 [162 Cal.Rptr. 320, 606 P.2d 355] [where defendant loaned skilled operator and crane for less than a day to third party and operator retained unlimited discretion to operate crane as he deemed necessary to achieve results third party desired, evidence permitted inference that plaintiff was acting under defendant's orders to do a specific task for third party and that plaintiff was not third party's special employee]; *Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at p. 178.)

The present case does not resemble those relied on by Wedeck. Wedeck was not sent in briefly to Unocal to perform a task, with unlimited discretion in how she achieved the result. She was given specific training by Unocal, was expected to and did follow Unocal's particularized procedures, and was given regular assignments by Unocal supervisors during the nearly one year she worked at the chemical laboratory. The undisputed facts show that the direction given to Wedeck at Unocal was not merely informational.

Application of the great majority of the secondary factors to the undisputed facts also leads to the conclusion that Wedeck was Unocal's employee. Wedeck performed Unocal's work at Unocal's jobsite using, with only minimal exceptions, Unocal's tools and equipment;[5] Lab Support and Unocal agreed that Wedeck would be wholly trained and supervised by

---

[5]That Unocal may have provided its permanent chemist employees with additional equipment beyond that provided to temporary employees does not alter the fact that Unocal

Unocal;[6] Wedeck accepted the assignment with Unocal and acquiesced in all of the conditions of work in Unocal's Chemical Laboratory;[7] Unocal paid Lab Support an hourly rate for Wedeck's work, and Lab Support paid her;[8] and she worked at the laboratory for nearly one year. (See *Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1250.)

With respect to the factor concerning the right to fire the employee, Wedeck's supervisor at Unocal, Dale Iverson, understood he had the authority to terminate Wedeck's employment. Wedeck, on the other hand, understood that if Unocal no longer wanted her services, it would so inform Lab Support, which would in turn inform her. Wedeck argues that her testimony created a triable issue of fact because the factor regarding the right to discharge the employee would require that Unocal had the right to fire Wedeck from her job with Lab Support, not just to remove her from her position with Unocal.

In *Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at page 177, the Supreme Court stated: "Evidence that the alleged special employer has the power to discharge a worker 'is strong evidence of the existence of a special employment relationship. . . .' [Citation.]" However, the court concluded that the ability to terminate the special employment or have the employee removed from the premises of the special employer is not necessarily probative of the existence of a special employment relationship. "[T]hat an alleged special employer can have an employee removed from the job site does not necessarily indicate the existence of a special employment relationship. Anyone who has the employees of an independent contractor working on his premises could, if dissatisfied with an employee, have the employee removed. Yet, the ability to do so would not make the employees of the independent contractor the special employees of the party receiving the services." (*Id.,* fn. 9.)

---

supplied Wedeck with virtually all of the tools and equipment she needed to do her job in the laboratory.

[6]As we shall discuss in part III., *infra,* Unocal's purchase order did not change the agreement between the parties that Unocal would supervise Wedeck.

[7]Wedeck asserts that she did not consent to the special employment relationship. However, "consent to the special employment relationship is normally implied, by the weight of authority, from acceptance of the special employer's control." (*Santa Cruz Poultry, Inc.* v. *Superior Court* (1987) 194 Cal.App.3d 575, 581-582 [239 Cal.Rptr. 578], citing 1C Larson, Workmen's Compensation Law, § 48.15, p. 8-428 et seq.; see also *Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at p. 179.)

[8]This factor is not particularly enlightening in determining whether a special employment relationship exists (*McFarland* v. *Voorheis-Trindle Co., supra,* 52 Cal.2d 698, 705), particularly in the labor brokerage context where the general employer often handles administrative details, including payroll. (Cf. *Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1246.)

*Kowalski* was not concerned with the right of a special employer to terminate an employee from his or her general employment. Rather, the court was merely cautioning that "the power of the alleged special employer to terminate the special employment relationship is not determinative, since that power will always be present." (*Santa Cruz Poultry, Inc.* v. *Superior Court, supra,* 194 Cal.App.3d at p. 581, fn. 1.) Thus, we disagree with Wedeck to the extent she contends, relying on *Kowalski,* that a triable issue of fact arises from an evidentiary conflict as to Unocal's ability to discharge her from employment at Lab Support. Despite retaining the right to terminate the special employment relationship, the ability of a special employer to discharge the employee from his or her *general* employment would be unusual indeed, particularly in the labor broker context.

 Moreover, even if the power to actually discharge the employee is a proper factor for consideration in the present situation, the factual dispute about Unocal's ability to terminate Wedeck from her employment does not raise a triable issue of material fact, given the strength of the other factors— particularly with respect to Unocal's right to control and direct Wedeck's activities—in demonstrating that Wedeck was the special employee of Unocal. (See *Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at p. 175; *Riley* v. *Southwest Marine, Inc., supra,* 203 Cal.App.3d at p. 1250.)

### III.

 Wedeck next argues the trial court erred in admitting extrinsic evidence to determine the parties' intent with respect to the July 1993 purchase order generated by Unocal and signed by Amy Conner of Lab Support. According to Wedeck, the purchase order is a fully integrated agreement and, therefore, is not subject to interpretation by parol evidence. [9]

 "The central question in determining whether there has been an integration, and thus whether the parol evidence doctrine applies, is 'whether

---

[9] Section 1856, subdivision (a) (the "parol evidence rule"), provides that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Subdivision (g) of section 1856 provides, however, that "[t]his section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement . . . ." Finally, section 1860 provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." (See also Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."].)

the parties intended their writing to serve as the exclusive embodiment of their agreement.' [Citation.] The question is one of law for resolution by the court . . . ." (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385-1386 [265 Cal.Rptr. 412].) To determine this issue, the court must examine the surrounding circumstances, i.e., "must attempt to place itself in the same situation as that in which the parties found themselves at the time of contracting. [Citation.] To do this, the court must receive provisionally all evidence offered to prove the intention of the parties, including evidence concerning any proffered prior or contemporaneous collateral agreement itself." (*Id.* at p. 1387; see also 2 Witkin, Evidence (3d ed. 1986) § 971, pp. 917-918 [there is "both principle and authority for the introduction of evidence of the surrounding circumstances and prior negotiations for the limited purpose of determining whether the writing in question was intended to supersede all other transactions"]; § 1860; Civ. Code, § 1647.)

"When reviewing a contract, [the appellate court] must independently construe the parties' agreement." (*Tana* v. *Professionals Prototype I Ins. Co.*, *supra*, 47 Cal.App.4th at p. 1616; see also *Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166 [6 Cal.Rptr.2d 554] [when competent parol evidence is not conflicting, construction of the contract is a question of law, and the appellate court will independently construe the writing].)

In the present case, we conclude the trial court was correct to consider the extrinsic evidence concerning the circumstances surrounding execution of the purchase order to determine the intent of Unocal and Lab Support. (See § 1860; Civ. Code, § 1647.) We also conclude this unrefuted evidence demonstrates that the parties intended the purchase order to reflect the terms of the original August 20, 1992, agreement rather than the inconsistent terms in question on the reverse side of the purchase order.

Finally, in addition to the unrefuted extrinsic evidence showing Unocal's and Lab Support's intent to rely on the August 20, 1992, agreement with respect to Wedeck's employment status, the ongoing conduct of all parties, as discussed earlier in this opinion, demonstrates that Unocal was Wedeck's special employer. This is because, regardless of what sort of a relationship a contract purports to create, " 'the terminology used in an agreement is not conclusive . . . even in the absence of fraud or mistake.' [Citations.] 'The contract cannot affect the true relationship of the parties to it. Nor can it place an employee in a different position from that which he actually held.' [Citation.]" (*Kowalski* v. *Shell Oil Co.*, *supra*, 23 Cal.3d at p. 176.) It is "the reality of the employment relationship, not the parties' paper agreement, [that] controls the parties' rights." (*Santa Cruz Poultry, Inc.* v. *Superior Court*, *supra*, 194 Cal.App.3d at p. 581.)

For these reasons, we find the purchase order does not raise a triable issue of fact as to whether Unocal was Wedeck's special employer.

## IV.

Wedeck's final contention is that in granting the motion for summary judgment the trial court failed to comply with section 437c, subdivision (g), which requires that such an order "specify the reasons for its determination." We disagree. The trial court's written and oral orders make clear that its determination was based on a finding that all of the evidence established that Unocal was Wedeck's special employer as a matter of law. "For purposes of meaningful appellate review (a key objective of subdivision (g) of section 437c), the court's statement of reasons is quite adequate. Certainly, there is no question about the reason this motion for summary judgment was granted." (*W. F. Hayward Co.* v. *Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101, 1111 [20 Cal.Rptr.2d 468]; see also *Goldrich* v. *Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782 [31 Cal.Rptr.2d 162].)

### DISPOSITION

The judgment is affirmed.

Haerle, J., and Ruvolo, J., concurred.