Filed 2/22/23  Rojas v. Orion Plastics Corp. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| JONATHAN ROJAS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ORION PLASTICS CORPORATION,<br><br>    Defendant and Respondent. | B307485<br><br>(Los Angeles County Super. Ct. No. 19STCV03420) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge. Affirmed.

Amaro Baldwin, Michael L. Amaro, Rudie D. Baldwin, Sanaz Cherazaie and Mary E. Bevins for Plaintiff and Appellant.

Berman, Berman, Berman, Schneider & Lowary, Evan A. Berman and Gina M. Genatempo for Defendant and Respondent.

## INTRODUCTION

Jonathan Rojas appeals from the trial court's summary judgment in favor of Orion Plastics Corporation (Orion) on his action for personal injuries sustained while working at Orion. On appeal, Rojas contends the trial court erred in determining Orion was his employer as a matter of law, and in ruling he was statutorily barred from bringing a tort action against Rojas based on the workers' compensation exclusivity doctrine. (See Lab. Code, §§ 3602, subds. (a), (d)(1) & (d)(2).)[1] For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Chartwell Staffing Agency (Chartwell) employed Rojas, and assigned him to work at Orion in August 2016, pursuant to the "Revised Service Agreement" and "Service Agreement" between Chartwell and Orion (collectively, the services agreement). Rojas worked as a "packer" at Orion from August 2016 until February 3, 2017, when he was injured while working on a machine used to manufacture commercial plastic bags. The incident occurred when Rojas's supervisor at Orion allegedly instructed him to insert his arm into the machine to clear a jam.

Rojas filed a workers' compensation claim for the incident. On November 20, 2018, the State of California Workers' Compensation Appeals Board issued its Order Approving the Compromise & Release entered into between Rojas and Chartwell.

---

1    All further undesignated statutory references are to the Labor Code.

After receiving the workers' compensation settlement, on January 31, 2019, Rojas filed a complaint for personal injury damages against Orion.[2] Orion moved for summary judgment, asserting the workers' compensation settlement Rojas received for his injuries while working at Orion was his exclusive remedy for those injuries. It argued that the undisputed evidence demonstrates that although Chartwell was Rojas's original or "general" employer, Orion was Rojas's second or "special" employer. It follows, according to Orion, that Rojas is barred from bringing a civil action for tort damages under section 3602, subdivision (d).[3] In opposition, Rojas contended Orion failed to meet its burden of proving both that Orion paid workers' compensation insurance that covered Rojas's incident, and that Orion controlled Rojas's employment activities such that Rojas should be considered a special employee.

The trial court granted Orion's motion, finding the evidence demonstrated Orion contracted with Chartwell to cover Rojas's workers' compensation claims. It further found Orion was Rojas's special employer as a matter of law. It therefore held Orion is protected from tort liability by the worker's compensation exclusivity rule. The court entered judgment in favor of Orion, and Rojas timely appealed.

---

2    Rojas named two additional entities as defendants, neither of which is a party to this appeal.

3    As discussed in more detail below, under section 3602, subdivisions (a), (d)(1) and (d)(2), workers' compensation is the employee's sole remedy for job-related injuries, and both the general and the special employer are immune from lawsuits alleging personal injury liability.

3

## DISCUSSION

### A.     Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 (*Miller*).) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

### B.     Dual Employers and the Workers' Compensation Exclusivity Doctrine

Generally, an employer that provides workers' compensation coverage for its employees is not liable in tort for negligent injury to those employees. (§ 3602, subd. (a).) The workers' compensation system recognizes that employees may

4

work for dual employers, with the original or "general" employer hiring out employees to the "special" employer. (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 174-175 (*Kowalski*).) Section 3602, subdivision (d)(1) addresses this scenario by providing, in part: "[A]n employer may secure the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees. In those cases, both employers shall be considered to have secured the payment of [workers' compensation]." Thus, under section 3602, subdivision (d)(1), if the general employer agrees to obtain, and does obtain, worker's compensation coverage for the employees on behalf of the special employer, "the employee is generally limited to a statutory workers' compensation remedy for injuries he receives in the course of his employment with the special employer; he may not bring a separate tort action against either employer." (*Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1248 (*Riley*).)

"In determining whether a special employment relationship exists, the primary consideration is whether the special employer has "'[t]he right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not . . . .'"" (*Kowalski, supra*, 23 Cal.3d at p. 175.) "Factors relevant to determining whether an employee is the borrowed employee of another include: (1) whether the borrowing employer's control over the employee and the work he is performing extends beyond mere suggestion of details or cooperation; (2) whether the employee is performing the special employer's work; (3) whether there was an agreement,

5

understanding, or meeting of the minds between the original and special employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated his relationship with the employee; (6) whether the special employer furnished the tools and place for performance; (7) whether the new employment was over a considerable length of time; (8) whether the borrowing employer had the right to fire the employee and (9) whether the borrowing employer had the obligation to pay the employee." (*Riley, supra*, 203 Cal.App.3d at p. 1250.)

"Circumstances which tend to negate the existence of a special employment relationship include the following factors: the worker is skilled and has substantial control over operational details, the worker is not engaged in the borrower's usual business, the worker works only for a brief period of time, does not use the tools or equipment of the borrowing employer but uses his own tools or the tools of the lending employer and the borrower employer neither pays the worker nor has the right to discharge him." (*Riley, supra*, 203 Cal.App.3d at p. 1250.)

Whether a special employment relationship exists is generally a question reserved for the trier of fact. (*Kowalski, supra*, 23 Cal.3d at p. 175.) "However, if neither the evidence nor inferences are in conflict, then the question of whether an employment relationship exists becomes a question of law which may be resolved by summary judgment." (*Riley, supra*, 203 Cal.App.3d at p. 1248.)

6

## C. The Trial Court Properly Granted Summary Judgment

Rojas contends the trial court erred by concluding Rojas's tort action against Orion was barred as a matter of law by the workers' compensation exclusivity doctrine for two reasons: (1) triable issues of material fact exist regarding whether Orion provided workers' compensation coverage for Rojas; and (2) triable issues of material fact exist regarding whether a special employment relationship exists between Orion and Rojas. We address each contention in turn below.

As discussed above, section 3602, subdivision (d)(1) allows an employer that borrows or leases an employee from another employer, i.e., a staffing agency, to fulfill its statutory obligations to obtain workers' compensation insurance by contracting with the staffing agency to obtain such coverage. (See § 3602, subd. (d)(1) ["[A]n employer may secure the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees"].) Section 3602, subdivision (d) "was enacted 'to allow general and special employers to come to an agreement to ensure that the workers are fully covered by workers' compensation insurance but not to burden both employers with redundant premium payments.' (Assem. Com. on Insurance, Rep. on Assem. Bill No. 914 (1995–1996 Reg. Sess.) May 2, 1995, p. 3; see also Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 914 (1995–1996 Reg. Sess.) July 12, 1995, p. 1)." (*InfiNet Marketing Services, Inc. v. American Motorist Ins. Co.* (2007) 150 Cal.App.4th 168, 178.)

Here, Chartwell and Orion entered into a services agreement under which Chartwell provided employees to Orion in accordance with the terms of the agreement. The services agreement provided "Chartwell . . . agrees to maintain . . . workers' compensation insurance . . . ." Thus, under the plain terms of the services agreement, Orion "secured the payment" of workers' compensation coverage for Chartwell employees who were assigned to Orion.

Rojas contends a material triable issue of fact exists regarding whether "Orion paid workers' compensation premiums for [ ] Rojas'[s] benefit." He argues that Michael Selix, Orion's operations manager, could not say in his deposition "whether Orion paid workers compensation insurance premiums that covered [ ] Rojas" and Orion "did not have any documentation to support the claim . . . that Orion paid workers compensation insurance premiums for Mr. Rojas'[s] benefit." But nothing in the language of the statute or the legislative history suggests the employer must provide the precise agreement regarding payment of premiums. Rather, under section 3602, Orion needed only to enter into a valid agreement with Chartwell under which Chartwell agreed to obtain, and did obtain, workers' compensation coverage for Rojas. As discussed above, the undisputed evidence demonstrates Orion contracted with Chartwell to obtain workers' compensation coverage for employees provided to Orion (see the services agreement), and Chartwell did in fact obtain workers compensation coverage for Orion (see the workers' compensation settlement).

Having concluded Orion secured the payment of workers' compensation insurance that covered Rojas, we now turn to

8

whether the evidence demonstrates Orion was Rojas's special employer as a matter of law. We hold it does.

In support of its motion for summary judgment, Orion provided the following evidence: (1) Rojas worked at Orion exclusively from August 2016 to February 2017; (2) all information regarding Rojas's schedule was provided to Rojas by Orion; (3) according to Rojas's complaint and deposition testimony, Rojas worked under the supervision of an Orion supervisor; (4) Rojas testified in his deposition that all training, guidance, and supervision was provided by Orion; (5) Rojas signed a document with an "Orion Plastics" header titled "Winder Safety Training," confirming Orion trained Rojas on the "winder-safety shut off emergency wire" and that Rojas will follow the safety training procedures at all times; (6) Rojas testified he attended monthly meetings at Orion; and (7) according to Rojas's deposition testimony and documents in his personnel file, Orion provided Rojas with essential equipment, including gloves, a knife, a blade cutter, a hairnet, and ear protection. Based on this evidence, we conclude Orion met its prima facie burden of establishing it was the special employer of Rojas because it had ""'[t]he right to control and direct the activities of [Rojas] or the manner and method in which the work is performed, whether exercised or not . . . .'"'" (*Kowalski, supra*, 23 Cal.3d at p. 175.)

The burden therefore shifted to Rojas to establish the existence of a triable issue of fact regarding Orion's special employment status. (See Code Civ. Proc., § 437c, subd. (p)(2).) Rojas argues material factual disputes exist based on the following facts: (1) the services agreement requires Orion to notify Chartwell before changing a temporary worker's duties; (2) Chartwell issued paychecks to Rojas; (3) Orion did not have the

power to terminate Rojas—it could only request Chartwell to reassign him; (4) the Workers Compensation Order Approving the Compromise & Release lists only Chartwell as the employer. This evidence is insufficient to create a triable issue of material fact. These facts demonstrate Chartwell issued paychecks to Rojas, and retained the ultimate power to terminate Rojas and change his job duties. As discussed below, however, these facts are insufficient to preclude a finding that Orion, as a matter of law, was Rojas's special employer.

In *Riley, supra,* 203 Cal.App.3d 1242, 1246 a labor broker, Manpower, Inc., hired the plaintiff, Riley. Manpower then assigned Riley to work for Southwest Marine. (*Ibid*.) Riley's deposition testimony established the following: he agreed to the Southwest Marine work assignment; he was an unskilled general laborer who was working exclusively at Southwest Marine's job site; Southwest Marine personnel trained Riley, provided his daily job instructions and supervised his work; Southwest Marine provided all safety equipment and work tools; Riley worked for Southwest more than briefly; he had been on the job for over seven months at the time of his injury; and Riley believed Southwest Marine had the power to discharge him. (*Id*. at p. 1250.) Although Manpower handled all payroll matters (*id*. at p. 1246), the court held "[t]hese facts unequivocally establish as a matter of law, that a special employment relationship existed between Riley and Southwest Marine." (*Id*. at p. 1250)

Similarly, in *Wedeck v. Unocal Corp.* (1997) 59 Cal.App.4th 848, 852 (*Wedeck*), the Court of Appeal affirmed the trial court's finding on summary judgment that Unocal Corporation was Wedeck's special employer as a matter of law. There, plaintiff Wedeck, a chemist, worked for Lab Support, a temporary

10

employee leasing agency. (*Ibid*.) The undisputed facts demonstrated "Wedeck received ongoing training and instruction from Unocal chemists concerning the work she was to perform in the chemical laboratory; she referred to Unocal procedures manuals and followed Unocal's procedures and instructions in performing her work; Unocal provided Wedeck with all of her work assignments in the laboratory; and her quality assurance tests were monitored by Unocal supervisors for completeness." (*Id*. at pp. 858-859.) These facts showed "Unocal had the right to control and direct Wedeck's activities and the manner in which her work was performed." (*Id*. at p. 858.) The court noted it disagreed with Wedeck to the extent she contended a "triable issue of fact arises from an evidentiary conflict as to Unocal's ability to discharge her from employment at Lab Support." (*Id*. at p. 862.) It explained: "Despite retaining the right to terminate the special employment relationship, the ability of a special employer to discharge the employee from his or her *general* employment would be unusual indeed, particularly in the labor broker context." (*Ibid*, emphasis in original.)

Like the facts in *Riley* and *Wedeck*, here the undisputed evidence demonstrates: Orion trained and supervised Rojas; Orion provided Rojas with necessary equipment; Rojas was engaged in Orion's usual business; Orion set Rojas's schedule, Rojas worked for Orion more than briefly (approximately six months); and Rojas worked for Orion exclusively during that time period. We agree with *Riley* and *Wedeck* that these facts establish, as a matter of law, a special employment relationship existed between Rojas and Orion. (See also *Kowalski, supra*, 23 Cal.3d at p. 177 ["Evidence that (1) the employee provides unskilled labor, (2) the work he performs is part of the employer's

11

regular business, (3) the employment period is lengthy, and (4) the employer provides the tools and equipment used, tends to indicate the existence of special employment relationship"].)

Rojas's attempt to distinguish *Riley* and *Wedeck* is unavailing. Rojas contends that unlike the training and supervision provided in those cases, here, "Orion did not provide . . . training regarding operation of the particular machine [ ] Rojas was using at the time of the incident" and Orion does not have evidence "it provided [ ] Rojas with the same level of training that it provides other employees in [ ] Rojas'[s] position." That the training may have been insufficient or inadequate, however, does not refute the fact Orion provided all training, guidance, and supervision; Rojas does not contend Chartwell provided any training or supervision.

Moreover, Rojas's reliance on *Kowalski, supra*, 23 Cal.3d 168 is misplaced. In *Kowalski*, the California Supreme Court reversed the trial court's grant of a judgment notwithstanding the verdict because there was substantial evidence to support the jury's finding that plaintiff was not Shell Oil Company's special employee. (*Id*. at p. 179.) The facts in *Kowalski* are distinguishable, however. There, unlike here, plaintiff was not permanently assigned to Shell, he only worked on the Shell premises for approximately two and a half months, Peterson (the contractor company that employed plaintiff) provided all tools and equipment to plaintiff, and plaintiff was at all times under the direct supervision of Peterson, not Shell. (*Id*. at pp. 178-179.) Accordingly, *Kowalski* does not assist Rojas.

Finally, we reject Rojas's argument that the services agreement provides Chartwell is Rojas's "only employer." The services agreement provides that "[a]ll persons furnished by

12

[Chartwell] to fill positions with [Orion] shall remain employees of [Chartwell] at all times." This provision does not state, as Rojas contends, that Chartwell is Rojas's *sole* employer, nor does it preclude a finding that Rojas was in a dual employment situation. (See *Riley, supra*, 203 Cal.App.3d 1242, 1251 ["Riley's evidence he was [the temporary agency's] employee did not raise a material factual dispute; Riley was in a dual employment situation. At the time of his injury, [the temporary agency] was not Riley's sole employer; Riley also had a 'special' employer, [the employer to which the temporary agency assigned Riley]"].)

On this record, we conclude Rojas failed to carry his burden to demonstrate a triable issue of material fact exists regarding whether Orion was Rojas's special employer at the time of the incident. As discussed above, Orion secured workers' compensation insurance for Rojas under the terms of its services agreement with Chartwell; thus, under section 3602, subdivisions (d)(1) and (d)(2), Rojas is precluded from bringing his tort action against Orion for his work-related injuries. The trial court therefore properly granted summary judgment in favor of Orion.

## DISPOSITION

The judgment is affirmed. Orion is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, Acting P. J.

We concur:

COLLINS, J.

DAUM, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.